Kenneth G. Parker (State Bar No. 182911)
  kenneth.parker@haynesboone.com
Jason T. Lao (State Bar No. 288161)
  jason.lao@haynesboone.com
Andrea Levenson (State Bar No. 323926)
  andrea.levenson@haynesboone.com
**HAYNES AND BOONE, LLP**
600 Anton Boulevard, Suite 700
Costa Mesa, California 92626
Telephone: (949) 202-3000
Facsimile: (949) 202-3001

Joseph Lawlor (*pro hac vice* to be filed)
  joseph.lawlor@haynesboone.com
**HAYNES AND BOONE, LLP**
30 Rockefeller Plaza, 26th Floor
New York, NY 10112
Telephone: (212) 659-7300
Facsimile: (212) 918-8989

*Attorneys for Plaintiff Benebone LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENEBONE LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>PET QWERKS, INC.,<br><br>        Defendant. | Case No.<br><br>**COMPLAINT FOR:**<br>**(1) INFRINGEMENT OF U.S. PATENT NO. D870,400;**<br>**(2) INFRINGEMENT OF U.S. PATENT NO. D871,686;**<br>**(3) TRADE DRESS INFRINGEMENT;**<br>**(4) UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Benebone LLC ("Benebone" or "Plaintiff"), by and through its counsel, brings this action against Defendant Pet Qwerks, Inc. ("Pet Qwerks" or "Defendant") and hereby alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action to remedy acts of: (1) infringement of U.S. Design Patent No. D870,400 ("the '400 Patent"); (2) infringement of U.S. Design Patent No. D871,686 ("the '686 Patent"); (3) trade dress infringement under the Lanham Act Section 43(a), 15 U.S.C. § 1125(a); (4) unfair competition under California Business and Professions Code § 17200, *et seq.*; and (5) unfair competition under the common law of California.  A copy of the '400 Patent and the '686 Patent are attached as Exhibits A and B, respectively.

2.      Benebone is one of the leading brands of high quality dog chew toys designed and manufactured exclusively in the U.S.A. using 100% American-made materials.  Benebone's products are well-known for their unique design language, natural flavorings, and high-quality build.  In only seven short years, Benebone has risen to a competitive level in the chew toy category, facing off against huge rivals who have been present in the category for decades.

3.      As a direct result of their innovative and distinctive designs, Benebone products have become greatly successful and have become uniquely associated with Benebone as their source.

4.      Benebone invests considerable time, effort, and money in developing and protecting its reputation and intellectual property, including by securing multiple design patents and trademarks for its line of products.

5.      One of Benebone's best-selling lines is the Maplestick / Bacon Stick, which embody several design patents issued by the U.S. Patent and Trademark Office ("USPTO").

6.      Rather than design its own product, Pet Qwerks, a Benebone competitor, began selling a "BarkBone Stick" that is a knock-off of Benebone's patented design

and the "Flavorit BarkBone" that knocks off another popular Benebone design (the "Accused Products").  In addition to selling a product that infringes on Benebone's patents, Pet Qwerks has imitated Benebone's product packaging, design, and marketing materials in a scheme to deceive consumers and distort the marketplace.  Pet Qwerks has done this with an aim of injuring Benebone while increasing its own revenues.

7.    Benebone sought to avoid litigation and resolve this matter amicably, and it has written to Defendant in an effort to do so, but the parties were unable to resolve the dispute.  Benebone now brings this civil action to enforce its rights and protect its brand, alleging claims for patent infringement, trade dress infringement, and violations of California statutory and common law.

## THE PARTIES

8.    Plaintiff Benebone is a limited liability company organized and existing under the laws of the State of Connecticut, with its principal place of business located at 207 Meadow Road, Edison, NJ 08817.

9.    On information and belief, Pet Qwerks is a corporation organized and existing under the laws of California, with its principal place of business located at 9 Studebaker Dr., Irvine, CA 92618.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332 (diversity of citizenship), 28 U.S.C. § 1338(a) (civil action arising under any Act of Congress relating to patents), and 15 U.S.C. § 1121 (any action arising under the Lanham Act), 28 U.S.C. § 1338(b) (action asserting claim of unfair competition joined with a substantial and related claim  under the trademark laws).  This Court has supplemental jurisdiction over the remaining state law claims under 28 U.S.C. §1367 because the claims are so related to Benebone's claims under

1   federal law that they derive from a common nucleus of operative fact and form part of
2   the same case or controversy.

3       11.     This Court has general and specific personal jurisdiction over Defendant
4   in this case because Defendant is a California corporation, maintains its principal place
5   of business in this judicial district, and on information and belief, has committed and
6   continues to commit acts of patent infringement and false advertising/implied passing
7   off within this judicial district.

8       12.     Either directly, or through its agents and/or affiliates, Defendant has
9   conducted and continues to conduct substantial and routine business in this judicial
10  district, including, on information and belief, by marketing, offering to sell, and/or
11  selling infringing products in this judicial district and/or committing false
12  advertising/implied passing off within this judicial district.

13      13.     Defendant's acts have caused injury to Plaintiff within this judicial
14  district.

15      14.     Venue is proper in the Central District of California under the general
16  federal venue statute, 28 U.S.C. §§ 1391(b), (c), and (d) because, among other reasons,
17  Defendant is organized and existing under the laws of the State of California, maintains
18  a physical place of business in this judicial district, and on information and belief, has
19  committed acts of patent infringement and/or false advertising/implied passing off
20  within this judicial district.  In addition, and in the alternative, venue is proper in this
21  judicial district under the specific venue provision relating to patent infringement cases,
22  28 U.S.C. § 1400(b) because Defendants have committed acts of infringement in this
23  judicial district.

## PATENTS-IN-SUIT

24
25      15.     On December 17, 2019, the U.S. Patent and Trademark Office duly and
26  legally issued the '400 Patent entitled "Pet Chew Toy."  A true and correct copy of the
27  '400 Patent is attached as Exhibit A.

28      16.     The '400 Patent is valid and enforceable.

17.   Benebone is the lawful owner by assignment of all rights, title and interest in and to the '400 Patent, possesses all rights of recovery under the '400 Patent, and has standing to sue for infringement of the '400 Patent.

18.   On December 31, 2019, the U.S. Patent and Trademark Office duly and legally issued the '686 Patent entitled "Pet Chew Toy."  A true and correct copy of the '686 Patent is attached as Exhibit B.

19.   The '686 Patent is valid and enforceable.

20.   Benebone is the lawful owner by assignment of all rights, title and interest in and to the '686 Patent, possesses all rights of recovery under the '686 Patent, and has standing to sue for infringement of the '686 Patent.

## FACTUAL BACKGROUND

### A.   Benebone's "Dogma"

21.   Benebone is a family-owned dog toy business that was established in 2012.  After spending a year on the design of a single product, the curved wishbone, Benebone sold its first chew toy in 2013.  As dog owners and lovers, the Benebone family has always been driven to produce toys that dogs will love, while being responsible members of the dog owning community.

22.   There are seven pillars to Benebone's corporate ethos, which it refers to as its "Dogma."[1]

- Focus on Delighting Dogs
- Be Valuable to Pet Parents
- Practice Good Business
- Nothing but the Best
- Demonstrate Generosity
- Stay Playful
- Be Human

---

[1]   *Benebone* | OUR "DOGMA" (2020).  Available at: https://www.benebone.com/our-dogma/ (Accessed: April 29, 2020).

23.     Everything Benebone does, and every product it designs and sells, is driven by these seven principles.  To demonstrate generosity, Benebone has planted deep roots in its communities and participates in events and philanthropy to further support causes that are important to Benebone and its growing base of consumers.  To be human, Benebone has kept its small family business feel, while growing into a major participant in the industry in only a few years.

24.     Several of these principles drive the design and manufacture of Benebone's dog toys.  To focus on delighting dogs, Benebone seeks to design unique but simple products dogs will love.  Specifically, Benebone's design elements revolutionized dog chew toys as they focused on a clean, modern design.  Benebone's irregular and modern designs are instantly recognizable and are inseparable from the brand itself.

25.     Practicing good business and providing "nothing but the best" means that Benebone only uses the highest quality materials.  All Benebone products are made with USA-sourced nylon and flavored with USA-sourced real ingredients—real peanuts, white meat chicken, or bacon.

26.     Benebone manufactures all of its products in several factories in New York and has been lauded for manufacturing its products in the U.S.A., in part because American-made goods are particularly sought after in the highly-competitive dog toy market.[2]  According to industry publications, "[w]hen it comes to dog treats and chews, owners these days value American-made, ethically sourced and sustainable products made by manufacturers that are transparent about their production processes" like Benebone.[3]

---

[2] Solid Sourcing Required (2018). Available at:
http://www.petproductnews.com/December-2018/Solid-Sourcing-Required/
(Accessed: April 29, 2020).
[3] *Id.*

27.     Consumer preferences align neatly with Benebone's "Dogma," which has led to a massive expansion of the Benebone brand in just a few years since its inception. Benebone's dog toys are sold throughout the United States in retail locations from coast to coast, including independent pet stores, as well as larger retailers, including Pet Smart and Petco.  Benebone also sells its products through online retailers, including Amazon and Chewy.

**B.     Benebone's Widely-Praised Product Design**

28.     Benebone has been lauded for its unique design and approach.  Each toy begins with a simple directive: create something that dogs will love.  Benebone's designs are the result of a time-consuming and resource-intensive process that requires the coordination of designers, manufacturing, and marketing staff.

29.     Benebone revolutionized dog toy design with its curved Wishbone in 2013.  Most dog toys on the market at the time were flat, and Benebone's patented curved Wishbone design marked a new era in design.  Benebone continued this concept with the curved Dental Chew, a figure-8 shaped product.  The Maplestick's design followed on this market-leading concept, with a modern, linear design with non-tapered cylindrical nubs on each end oriented to ensure the product never lay flat on the ground.

30.     All of Benebone's designs are modern and artistic, making them instantly recognizable by product design alone.  These designs make up a portion of Benebone's trade dress and have become inseparable from the brand itself.

31.     There are several design elements that make the Benebone's brand unique and instantly recognizable.  First, its designs are shaped to never sit flat on the surface, and include arcs that add to the visual appeal of the products.  While a simple concept, this design element was revolutionary when introduced, paving the way for substantial market penetration in just a few years.  Second, Benebone's designs are modern and intentionally distant from the natural element they mimic.  For example, although the curved Wishbone vaguely resembles a bone, its modern design elements make it immediately recognizable that it is not, in fact, a real bone.

32.    The Maplestick is a clear example of this design language; while its modern and clean design takes cues from sticks, it intentionally does not look like an actual stick.  There are several key design features at work here.  First, the main portion of the Maplestick is dead-straight, unlike a real stick.  Second, it has equal branches at both ends, unlike a real stick.   Third, the branches at each end are terminated in a cylindrical way, which is not found in a natural stick.   Before the Maplestick was introduced, there were several other stick-themed products, most notably the Petstages Dogwood Stick Chew Toy and the Nylabone Stick Chew.   (Petstages and Nylabone are two of the largest brands in this category who have been in existence for decades.) The below images illustrate where stick chew toy design was before Benebone arrived on the scene.  Both designs were relatively flat and both were intended to resemble real sticks.  Benebone's modern Maplestick design turned this concept on its head.[4]



33.    Benebone's designs are a family of top sellers: the Wishbone, Dental Chew, Maplestick / Bacon Stick, and Zaggler, all shown below[5]:

---

[4] On the left is: *Strong Chew Real Wood Stick Chew Toy, Maple Bacon | Nylabone* (2020). Available at: https://www.nylabone.com/products/product-type/chew-toys/strong-chew/strong-chew-real-wood-stick-toy (Accessed: April 29, 2020).  On the right is: *Dogwood* (2020). Available at: https://petstages.outwardhound.com/dogwood-by-petstage.html (Accessed: April 29, 2020).

[5] *Benebone | Our Products* (2020). Available at: https://www.benebone.com/products/ (Accessed: April 29, 2020).


Wishbone


Dental Chew
( updated design )


Maplestick /
Bacon Stick


Zaggler

34.    Benebone's trade dress in its Maplestick / Bacon Stick includes the design elements shown and discussed in this Complaint, including, but not limited to:

     a.  brown color;

     b.  curved shape;

     c.  nubs in a Y shape at one end, juxtaposed with nubs at the other end such that the bone sits on a flat surface creating a distinctive look with at least one nub pointing upward and most or all of the elongated portion of the bone not touching the flat surface;

     d.  cylindrical nubs;

     e.  non-tapered nubs;

     f.  nubs with flat ends;

     g.  nubs that are roughly 1/3 or less of the length of the shaft of the bone, giving an elongated overall appearance;

     h.  a textured look;

     i.  cardboard packaging that surrounds the center of the product;

     j.  use of white and green in product packaging;

     k.  made in the USA logo; and

     l.  "real bacon" flavor.

(hereinafter, the "Asserted Trade Dress").

35.    Benebone's Wishbone is also encompassed within the same family of trade dress as the Maplestick / Bacon Stick and carries much of the same Asserted

Trade Dress, with additional protected trade dress, including a unique curve that allows it to sit off a flat surface and uniquely-shaped nubs on its ends.

36.     Benebone's designs are a unique and clear identifier of the brand.  In contrast, its competitors have hundreds or thousands of SKUs without a common design language or common elements.  Nylabone and Petstages are two of the biggest brands in the category.  Nylabone, has products shaped like bones, antlers, rings, dinosaurs, pigs, rawhide, blocks of cheese, baby toys, plush toys and more.  Nylabone also sells products in other categories like toothbrushes and toothpaste, dental wipes and sprays, finger brushes and tartar remover.[6]





37.     Similarly, Petstages has no consistent design ethos.  Its product line includes sticks, antlers, bones, rawhide, vegetables, balls, disc flyers, plush toys, baby toys, and more.  Petstages also sells cat toys, cat scratchers, as shown below.[7]

---

[6] *Shop Dog Chew Toys, Edibles & Dental Products at Nylabone* (2020).  Available at: https://www.nylabone.com/products (Accessed: April 29, 2020).

[7] *Petstages Home* (2020). Available at: https://petstages.outwardhound.com/ (Accessed: April 29, 2020).



38.   These brands' products span across a wide range of materials, colors, sizes, shapes, and design elements.

39.   By contrast, Benebone designs only a single category of dog toys—and within that category—only four core designs.  The designs are simple, modern, clean, and symmetrical.  These limited unique and cohesive designs have become instantly recognizable as a family and have become inseparable from the Benebone brand.  The Maplestick / Bacon Stick is one of these key designs.

40.   Leading popular publications have praised Benebone's products, including NBC's Today Show, Cosmopolitan, Woman's Day, and Bustle.

41.   For example, Bustle listed Benebone first on its list of "The 14 Best Chew Toys For Dogs."[8]  Bustle specifically praised the Benebone toy for its "unique" design and because "it actually smells and tastes like bacon."   Cosmopolitan included Benebone on its list of "26 Gifts Every Dog Mom Should Buy ASAP," and writer

---

[8] *14 Durable Dog Toys That Stand Up To Even The Toughest Chewers* (2019).
Available at: https://www.bustle.com/p/the-14-best-chew-toys-for-dogs-19271982
(Accessed: April 29, 2020).

Carina Hsieh said "[m]y dog legit goes bananas for" the Benebone toy.[9]  Woman's Day also praised Benebone's design in its article on "15 Indestructible Dog Toys to Challenge Tough Chewers."[10]

42.   NBC's Today Show has also heaped praise on Benebone's design, saying:

If dogs could type, this made-in-America chew toy would have twice as many Amazon reviews (currently 6,500 with a 4.3-star rating).  The key to its popularity among dogs is the winning combination of good design, it 'rocks to easily position a comfortable chewing session,' and quality ingredients.  It's flavored with food-grade bacon, chicken and peanut butter. Dog owners appreciate its durability.  One reviewer says his two dogs chew on theirs 8 to 10 hours a day, yet the bones have lasted four months![11]

43.   Benebone's Maplestick / Bacon Stick have also received significant praise for their design.  For example, Bustle lauded Benebone's Maplestick for its "ridges and curves" on its list of "37 Genius Pet Products That Must Have Been Invented By A Dog Whisperer."[12]  INVERSE included Benebone's Maplestick in its article, "4 Best Indestructible Dog Toys for Aggressive Chewers," calling it "clever" and praising its

---

[9] *Gifts Every Dog Owner Needs to Buy ASAP* (2019). Available at: https://www.cosmopolitan.com/lifestyle/g25381745/dog-gifts/ (Accessed: April 29, 2020).

[10] *15 Indestructible Dog Toys for Your Tough Chewer* (2019). Available at: https://www.womansday.com/life/pet-care/g26763903/most-indestructible-dog-toys/ (Accessed: April 29, 2020).

[11] *Celebrate National Dog Day with 14 dog-approved favorites* (2018). Available at: https://www.today.com/pets/celebrate-national-dog-day-14-dog-approved-favorites-t135954 (Accessed: April 29, 2020).

[12] *37 Genius Pet Products That Must Have Been Invented By A Dog Whisperer* (2020). Available at: https://www.bustle.com/p/37-genius-pet-products-that-must-have-been-invented-by-a-dog-whisperer-21771555 (Accessed: April 29, 2020).

"shape."[13]

44.     Benebone's use of real bacon flavor in its toys, a part of its Asserted Trade Dress, is a key differentiator in its segment of the market.  At the time Benebone introduced its real bacon flavoring, no other brand used real bacon as flavoring in a nylon dog chew toy.  Benebone's use of real bacon flavor was and remains a material part of Benebone's branding.  Benebone prominently promotes its use of "REAL BACON" on its product packaging, its website, marketing materials, and online retailers Amazon and Chewy.  Benebone has also registered and applied for several trademarks that refer to its use of real bacon flavor.[14]

45.     For the reasons discussed above, Benebone's products are well-received by customers.  According to Romper, Benebone is "praised so highly by buyers."[15] Benebone's products are highly sought after in both traditional retail and online markets.  For example, an article run in industry publication Pet Product News in 2019 noted that Benebone products were a top seller at an independent pet store.[16] Benebone's Maplestick / Bacon Stick have a 4.5/5 average review with more than 1,900 customer reviews on Amazon.com.[17]

---

[13] *The Best Dog Toys For Heavy Chewers* (2019). Available at: https://www.inverse.com/article/59276-best-dog-toys-aggressive-chewers (Accessed: April 29, 2020).

[14]   U.S. Reg. No. 5,613,742; U.S. App. 88/798,687.

[15]   *Your Chew-Happy Doggo Will Love These 15 Toys Even More Than Your Shoes* (2019). Available at: https://www.romper.com/p/15-toys-for-dogs-who-chew-everything-because-youre-about-to-run-out-of-shoes-18668902 (Accessed: April 29, 2020).

[16]   *Dogs Rule at This North Carolina Pet Store* (2019). Available at: http://www.petproductnews.com/Blog/Dogs-Rule-at-This-North-Carolina-Pet-Store/ (Accessed: April 29, 2020).

[17]   *Benebone Maplestick/Bacon Stick Real Wood Durable Dog Chew Toy* (2020). Amazon.com. Available at: https://www.amazon.com/Benebone-Maplestick-Durable-Stick-Large/dp/B07F6WYYJ5/ref=sr 1 1?dchild=1&keywords =benebone%2Bmaplestick&qid=1587494923&s=pet-supplies&sr=1-1&th=1 (Accessed: April 29, 2020).

## C.   Benebone Invests Significantly to Protect Its Reputation and IP

46.    Benebone has taken care to protect its reputation and intellectual property at great expense and effort.  Benebone holds a number of trademarks relating to both the BENEBONE brand and several other brands and marks.  Because Benebone devotes significant resources to product design, it has sought to protect those designs through the use of design patents.  Benebone's efforts to patent its unique designs have even been reported by the media.[18]

47.    The USPTO issued the '400 Patent and the'686 Patent (collectively, the "Asserted Patents" to Benebone.  The Asserted Patents depict a dog toy as shown below:



48.    Benebone's Maplestick / Bacon Stick, which was first introduced to the market in July 2018, embody the Asserted Patents.

## D.   Pet Qwerks Deceives Consumers and Misappropriates Benebone's IP

49.    Pet Qwerks began operating as a distributor of gift and stationary products, including oversized postcards.[19]  Pet Qwerks began selling a ball toy for dogs and in early 2016, began to expand its dog toy line.

50.    Much like the rest of Benebone's competitors (including Nylabone and Petstages discussed above), Pet Qwerks has no common design ethos.  Its designs

---

[18]  *CT patents hit record levels - for inventors and corporate profiteers* (2020). Available at: https://www.ctinsider.com/business/nhregister/article/CT-patents-hit-record-levels-both-for-14978129.php (Accessed: April 29, 2020).

[19]  *Pet Qwerks Story* (2020). Available at: https://shop.petqwerks.com/blogs/news/123321415-pet-qwerks-story (Accessed: April 29, 2020).

include balls, antlers, ropes, tires, rings, rawhide, sticks, ropes, bubbles, plush toys and hockey pucks.  Examples of Pet Qwerks's products, packaging, and design are below:

   

   [20]

51.     In March 2017, Benebone's CEO received a call from a customer telling him that he should talk to Pet Qwerks.  This customer suggested to Benebone that Pet Qwerks may be for sale.  Benebone's CEO spoke to Pet Qwerks's VP of Sales but did not make any offer to associate with Pet Qwerks or to purchase Pet Qwerks or any of its business lines.  Benebone chose not to follow up with Pet Qwerks's founder, whose contact information was provided subsequent to the call.

52.     Pet Qwerks was not a major competitor in the same market segments as Benebone at the time and was primarily selling dog balls, rubber tire products, and a line of chew toys called "Flavorit" with the purpose of smearing peanut butter or other food in its holes.

53.     According to Pet Qwerks' product catalogs, the vast majority of Pet Qwerks's products at the time were not manufactured in the U.S. and it did not use natural bacon flavoring.  None of their products had modern or curved design elements

---

[20] *Products* (2020). Available at: https://shop.petqwerks.com/collections/all/ (Accessed: April 29, 2020).

which were signature to the Benebone brand.

54.    Only a few months after the conversation between Benebone and Pet Qwerks, Pet Qwerks announced a new product it dubbed the BarkBone Stick, which was released in the summer of 2017.  As shown below, the BarkBone Stick (right) bears a striking resemblance to the Benebone Maplestick / Bacon Stick (left), which embodies Benebone's patented design.  The Pet Qwerks design contains each of the unique elements of the Maplestick design noted above:  a straight center, equal branches at both ends, and branches that end in cylindrical cutoffs with no taper.



55.    As Pet Qwerks began to roll out its product packaging and marketing materials, it became apparent that its goal was not simple to copy Benebone's patented design, but also to mimic Benebone's product packaging and other marketing materials.

56.    For example, the product sizing chart used by Pet Qwerks on its website is deceptively similar to the chart used by Benebone and demonstrate that the products offer nearly identical designs:[21]





---

[21] On left: *BarkBone Stick with Peanut Butter Flavor Dog Chew Toy for Aggressive Chewers, Made in USA - Pet Qwerks Toys* (2020). Available at:

57.   Pet Qwerks' marketing materials used on its social media pages also demonstrate that the overall look of the infringing BarkBone Stick is confusingly similar to Benebone's Maplestick / Bacon Stick:[22]

 

 

58.   Upon information and belief, Pet Qwerks has posted these marketing photos on its social media accounts with the intent to deceive customers and potential customers into believing that its infringing BarkBone Stick is the same as or associated with Benebone's Maplestick / Bacon Stick, based on the products appearing nearly identical in these images.

59.   Pet Qwerks uses images on its website that show the infringing BarkBone Stick in a vertical orientation that also emphasizes the apparent similarities with Benebone's Maplestick / Bacon Stick, and, upon information and belief, are intended

<hr>

https://petqwerks.com/product/barkbone-stick-peanut-butter-flavor-dog-chew-toy-made-in-usa/ (Accessed: April 30, 2020).

On right: (2020) Amazon.com. Available at: https://www.amazon.com/Benebone-Maplestick-Durable-Stick-Medium/dp/B07F6VB2KW (Accessed: April 30, 2020).

[22] *Pet Qwerks Toys* (2020).  Available at: https://www.facebook.com/petqwerks/ (Accessed on April 30, 2020).

to deceive consumers into believe that the products are associated and/or one in the same.



60.    Pet Qwerks uses other advertising that not only emphasizes the similarity of its products to Benebone's, but also presents them similarly, deceiving customers. Pet Qwerks products are often presented without packaging on the internet, both on internet retail sites such as www.amazon.com and in social media and lifestyle photos. For example, the images below show Benebone's advertising material that shows the Maplestick / Bacon Stick in a pile of toys (left), and Pet Qwerks' newer advertising that similarly displays its infringing product in a pile (right):[23]

 

---

[23] *BarkBone Stick Peanut Butter Flavor Infused Dog Chew, Made in USA* (2019). Available at:
https://www.facebook.com/138290592915913/videos/1586436031492395/
(Accessed: April 29, 2020).

61.     The look and feel of the Pet Qwerks BarkBone Stick packaging is also confusingly similar to the packaging for Benebone's Maplestick / Bacon Stick that is a part of Benebone's Asserted Trade Dress.  Both packages utilize minimal carboard that surrounds the center of the brown dog toy, which prominently displays the similarities in the products.  Pet Qwerks's packaging makes significant use of green and white – the same color pallet used by Benebone.

62.     The packaging for both Benebone and Pet Qwerks also prominently displays the American flag and Made in USA label, which is a significant driver of sales.[24]  Pet Qwerks also now sells its BarkBone in a "REAL BACON" flavor.  As shown below, Pet Qwerks uses the confusingly similar term and "REAL BACON" branding on its product packaging (Pet Qwerks, left; Benebone, right):[25]

 

63.     The Pet Qwerks BarkBone Stick is sold at many of the same and similar retailers as the Benebone's Maplestick / Bacon Stick—both in physical stores and online.  Pet Qwerks' infringing BarkBone Stick typically sells for between $9 and $15 at retail as compared to $10 to $20 for Benebone's Maplestick / Bacon Stick.

[24] *Solid Sourcing Required* (2018). Available at: http://www.petproductnews.com/December-2018/Solid-Sourcing-Required/ (Accessed: April 29, 2020).

[25] Left: *Interactive Dog Toys, Dog Toys, Dog Chews, Cat Toys, Pet Toys* (2020). Available at: https://petqwerks.com/ (Accessed: April 30, 2020).

Right: *Benebone* | Our Products (2020). Available at: https://www.benebone.com/products (Accessed: April 30, 2020).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

64.    Images on Amazon also show how the products are nearly identical from a consumer's perspective.  Any minor variations in the products are virtually eliminated when shown in use as dogs' paws, jaws, or both inevitably partially obscure the respective products.  For example, Pet Qwerks' infringing BarkBone Stick is shown on the left and Benebone's Maplestick / Bacon Stick is shown on the right:

 

 

65.    The screenshot below, taken from a video posted by a consumer on Amazon, shows that in person, the products are nearly indistinguishable:



66.    Because many of these products – particularly Pet Qwerks' products – are purchased online, the likelihood of consumer confusion is heightened.  Even if minor variations in the product design and packaging could be perceptible when comparing the products in person, consumers are rarely in a position to undertake such a comparison whether shopping online or at a brick and mortar retailer.  For example, when hung on a peg in a retail store the products are viewed head on and look confusingly similar.

67.    Moreover, upon information and belief, there is already actual confusion in the marketplace.  For example, upon information and belief, employees of retail partners believe that Pet Qwerks' infringing BarkBone Stick looks exactly like Benebone's Maplestick / Bacon Stick.  Upon information and belief, it is likely that consumers are confused and deceived by Pet Qwerks' marketing materials, product design, and product packaging and falsely associate and/or confuse Pet Qwerks' infringing BarkBone Stick with Benebone's Maplestick / Bacon Stick.

68.    Pet Qwerks' attempts to mimic the design language associated with Benebone and deceive customers has extended beyond just the BarkBone Stick. Benebone's curved design was simple but revolutionary when it was introduced. When Benebone was introduced, Pet Qwerks had a line of chew toys called "Flavorit" with the purpose of smearing peanut butter or other food in its holes. These chew toys were flat in design and were not found in many pet stores:[26]

  

69.    After Benebone's introduction and success of the curved Wishbone, Pet Qwerks introduced a new version of its Flavorit chews, rebranded as the "Flavorit BarkBone," with confusingly similar "real bacon" flavoring, a similar brown coloring, similarly shaped nobs on its end, and curved similarly to Asserted Trade Dress of Benebone's flagship Wishbone, with the intent to confuse and deceive consumers:[27]



---

[26] *Flavorit Bones Dog Chew Toys* (2020). Available at: https://shop.petqwerks.com/collections/flavorit-bones-dog-chew-toys (Accessed: April 29, 2020).

[27] *CBD BarkBone, Flavorit BarkBone & Wood BarkBone Dog Chew Toys* (2020). Available at: https://shop.petqwerks.com/collections/flavorit-barkbone-wood-barkbone-dog-chew-toys (Accessed: April 29, 2020).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

70.     The new design of the curved Pet Qwerks product is confusingly similar to the curve found in Benebone's Wishbone.  The Pet Qwerks product is at left, while the Benebone curved Wishbone is at right:

 

71.     At the time of the introduction of its Flavorit Barkbone design, none of Pet Qwerks's products had curved design elements which were signature to the Benebone brand and Asserted Trade Dress.  In addition, according to Pet Qwerks' product catalogs at the time, the vast majority of its products were not manufactured in the U.S. and it did not use natural bacon flavoring.

72.     The confusingly similar curved design and "REAL BACON" flavoring are prominently featured in Pet Qwerks' marketing materials:[28]



73.     While creating designs that copy significantly from the design and marketing of Benebone's successful products, Pet Qwerks's products do not appear to copy Benebone's product quality.  In fact, YouTube channel "Tough Toy Tryouts,"

---

[28] *Interactive Dog Toys, Dog Toys, Dog Chews, Cat Toys, Pet Toys* (2020). Available at: https://petqwerks.com/ (Accessed: April 30, 2020).

which has posted videos of dogs reviewing dog toys for several years, reviewed Pet Qwerks's BarkBone Stick and called it "the worst toy we've ever tested." Accordingly, Pet Qwerks' deceptive conduct will have (and has had) a deleterious effect on Benebone's goodwill."[29]

74.     Pet Qwerks is well aware of Benebone's '400 Patent and has continued its unauthorized infringing activity despite this knowledge. Benebone gave written notice to Pet Qwerks of their infringement of Benebone's '400 Patent on or about February 12, 2020. Benebone attempted, albeit unsuccessfully, to actively engage in good faith negotiations regarding Pet Qwerks' infringement. On information and belief, Pet Qwerks has pre-suit knowledge of the Asserted Patents and acted egregiously in that it has done nothing to avoid infringement.

## FIRST CLAIM FOR RELIEF
## Infringement of the '400 Patent

75.     Benebone alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

76.     At all times herein mentioned the '400 Patent was and is valid and fully enforceable.

77.     As shown below, a side by side comparison of Benebone's '400 Patent and Defendants' BarkBone Stick quickly reveals that the BarkBone Stick appears substantially the same as Benebone's '400 Patent to an ordinary observer, the resemblance is such as to deceive such an observer, inducing him to purchase one

---

[29] *Worst toy ever? | DOG TOY REVIEWS | Pet Qwerks Barkbone WOOD Mint Flavor Dog Toy* (2020). Available at: https://www.youtube.com/watch?v=xb_E9WwmxsI (Accessed: April 30, 2020).

1  supposing it to be the other:



U.S. Design Patent No. D870,400          Defendant's Pet Chew Toy

78.   Defendant has infringed and, despite Benebone's written request to stop, is still infringing Claim 1 of the '400 Patent by marketing, offering to sell, and/or selling its BarkBone.

79.   Defendant's use, offer for sale, offer to fulfill, sale, fulfillment, and/or shipment of the dog chew toy within the United States and its territories infringes the '400 Patent in violation of 35 U.S.C. §271(a).

80.   Defendant has had actual notice of the infringement of the '400 Patent since at least as early as February 12, 2020.

81.   Despite having notice of its infringement of the '400 Patent, Defendant has infringed, and will continue to infringe unless enjoined, the '400 Patent.

82.   As a result of Defendant's infringement of the '400 Patent, Benebone has been irreparably harmed, including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later, (2) negative effect on its reputation as innovator and pioneer, (3) the unquantifiable effect on lost sales of related products, (4) price erosion due to Defendant's BarkBone being sold at a price point lower than Benebone's patented product, (5) diversion of resources to defend against loss of market share caused by sales of the BarkBone, and (6) Defendant's unauthorized sales that are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

83.    Defendant's acts of infringement have been, and continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S.C. § 285 and the enhancement of damages pursuant to 35 U.S.C. § 284.

## SECOND CLAIM FOR RELIEF

## Infringement of the '686 Patent

84.    Benebone alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

85.    At all times herein mentioned the '686 Patent was and is valid and fully enforceable.

86.    As shown below, a side by side comparison of Benebone's '686 Patent and Defendants' BarkBone Stick quickly reveals that the BarkBone Stick appears substantially the same as Benebone's '686 Patent to an ordinary observer, the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other:

U.S. Design Patent No. D871,686                Defendant's Pet Chew Toy





87.    Defendant has infringed and is still infringing Claim 1 of the '686 Patent by marketing, offering to sell, and/or selling its BarkBone.

88.    Defendant's use, offer for sale, offer to fulfill, sale, fulfillment, and/or shipment of the dog chew toy within the United States and its territories infringes the '686 Patent in violation of 35 U.S.C. §271(a).

89.     As a result of Defendant's infringement of the '686 Patent, Benebone has been irreparably harmed, including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later, (2) negative effect on its reputation as innovator and pioneer, (3) the unquantifiable effect on lost sales of related products, (4) price erosion due to Defendant's BarkBone being sold at a price point lower than Benebone's patented product, (5) diversion of resources to defend against loss of market share caused by sales of the BarkBone, and (6) Defendant's unauthorized sales that are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

## THIRD CLAIM FOR RELIEF

### Federal Trade Dress Infringement and False Designation of Origin

### (15 U.S.C. § 1125(a))

90.     Benebone alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

91.     Benebone is the owner of all right and title to the distinctive Asserted Trade Dress embodied in Benebone products, and in particular in Benebone's Maplestick / Bacon Stick and Benebone's Wishbone.

92.     Benebone's Asserted Trade Dress, described above, is comprised of inherently distinctive features which are not functional and are protected under the Lanham Act § 43(a).

93.     In addition, the Asserted Trade Dress, as embodied in Benebone's Maplestick / Bacon Stick and Benebone's Wishbone products, has acquired secondary meaning.   Based on extensive and consistent advertising, promotion, and sales throughout the United States, the Asserted Trade Dress enjoys secondary meaning among consumers, identifying Benebone as the source of these products.

94.     Pet Qwerks has infringed Benebone's Asserted Trade Dress and created a false designation of origin by using in commerce, without Benebone's permission,

confusingly similar marks and design elements.  The potential for confusion is amplified by Pet Qwerks's choice to use the marks and design elements in connection with products that, in whole or in part, are copies or knock-offs of Benebone's own products.

95.     Pet Qwerks's unauthorized use of marks and design elements confusingly similar to Benebone's Asserted Trade Dress constitutes a false designation of origin, a false or misleading description of fact, a false or misleading representation of fact, and has caused and is likely to cause confusion, mistake, and/or deception as to the affiliation, connection, or association of Pet Qwerks's products with Benebone and the origin, sponsorship, or approval of Pet Qwerks's products by Benebone.

96.     The aforementioned acts constitute trade dress infringement, false designation of origin, and unfair competition in violation of 15 U.S.C. § 1125(a).

97.     Benebone is informed and believes that Pet Qwerks knew of the Asserted Trade Dress when it designed its products, and at least as early as February 12, 2020, and despite Benebone's requests continues to sell an infringing product.  Accordingly, Pet Qwerks's infringement has been and continues to be intentional, willful and without regard to Benebone's rights in the Asserted Trade Dress.

98.     As a direct and proximate result of Pet Qwerks's unlawful acts and practices, including those set forth above, Pet Qwerks has caused, is causing, and unless immediately enjoined by this Court, will continue to cause immediate and irreparable harm to Benebone, for which there is no adequate remedy at law, and for which Benebone is entitled to injunctive relief.

99.     As a direct and proximate result of the foregoing acts, Benebone has suffered and will continue to suffer significant injuries in an amount to be determined at trial.  Benebone is entitled to recover all damages, including attorneys' fees, that it has sustained on account of Pet Qwerks's infringement, and all gains, profits and advantages obtained by Pet Qwerks as a result of its unlawful acts.

100. Pet Qwerks's actions described above make this an exceptional case under 15 U.S.C. § 1117(a) and, therefore, Benebone is entitled to an award of its attorneys' fees and costs.

## FOURTH CLAIM FOR RELIEF

### Common Law Trade Dress Infringement

101. Benebone alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

102. Pet Qwerks's infringement of Benebone's Asserted Trade Dress also constitutes trade dress infringement under common law of the state of California.

103. The products Pet Qwerks produced, distributed, advertised, and offered for sale bear confusingly similar reproductions of Benebone's Asserted Trade Dress in the Maplestick / Bacon Stick and Wishbone, such as to cause a likelihood of confusion as to the source, sponsorship, or approval by Benebone of Pet Qwerks's products. Pet Qwerks's unauthorized use of the Asserted Trade Dress has caused and is likely to cause confusion as to the source of the products among consumers.

104. As a direct and proximate result of Pet Qwerks's unlawful acts and practices, including those set forth above, Pet Qwerks has caused, is causing, and unless immediately enjoined by this Court, will continue to cause immediate and irreparable harm to Benebone, for which there is no adequate remedy at law, and for which Benebone is entitled to injunctive relief.

105. As a direct and proximate result of the foregoing acts, Benebone has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Benebone is entitled to recover all damages, including attorneys' fees, that it has sustained on account of Pet Qwerks's infringement, and all gains, profits and advantages obtained by Pet Qwerks as a result of its unlawful acts.

106. Pet Qwerks's unlawful acts were willful, deliberate, and intended to cause confusion among the public, taken in reckless disregard of Benebone's rights. As such,

1  an award of exemplary and punitive damages is necessary in an amount sufficient to
2  deter similar misconduct in the future.

3  ## FIFTH CLAIM FOR RELIEF
4  ## (Unfair Competition in Violation of Cal. Bus. & Prof. Code, § 17200 et. seq.)

5  107.  Benebone alleges and incorporates by reference the allegations set forth
6  in the foregoing paragraphs as if fully set forth herein.

7  108.  By virtue of the acts complained of herein, Pet Qwerks has intentionally
8  caused a likelihood of confusion among consumers and the public and has committed
9  acts that constitute fraudulent, unlawful, and unfair business practices as defined by
10  California Business & Professions Code § 17200, *et seq.*

11  109.  Upon information and belief, Defendants' deceptive, unfair, and
12  fraudulent business practices were willfully undertaken with full knowledge of
13  Benebone's Asserted Trade Dress, and with the intent to misappropriate Benebone's
14  goodwill and reputation.

15  110.  As a direct and proximate result of the foregoing acts, Benebone has
16  suffered and will continue to suffer significant injuries in an amount to be determined
17  at trial.  Benebone is entitled to all available relief provided for under the California
18  Unfair Business Practices Act, Cal. Bus. & Prof. Code, § 17200 *et. seq.*, including an
19  accounting and disgorgement of all illicit profits that Pet Qwerks made on account of
20  its deceptive, unfair, and fraudulent business practices.   Furthermore, because
21  Benebone has no adequate remedy at law for Pet Qwerks's ongoing unlawful conduct,
22  Benebone is entitled to injunctive relief prohibiting Pet Qwerks from unfair
23  competition.

24  ## SIXTH CLAIM FOR RELIEF
25  ## (Unfair Competition Under California Common Law)

26  111.  Benebone alleges and incorporates by reference the allegations set forth
27  in the foregoing paragraphs as if fully set forth herein.

28

112.   Pet Qwerks's acts complained of herein have been committed and are being committed with the deliberate purpose and intent of appropriating and trading on Benebone's goodwill and reputation, and thereby unfairly competing with Benebone in violation of the common law of the State of California.

113.   Pet Qwerks's actions described herein were taken with substantial certainty that such acts would cause harm to Benebone and in conscious disregard for Benebone's rights.  Pet Qwerks's conduct described herein was done with malice, ill-will and intent to harm Benebone, such as to constitute oppression, fraud, malice, and despicable conduct under Cal. Civ. Code § 3294, and thereby entitling Benebone to exemplary damages in an amount appropriate to punish and set an example of Pet Qwerks.

114.   As a direct and proximate result of the foregoing acts, Benebone has suffered and will continue to suffer significant injuries in an amount to be determined at trial.  Benebone is entitled to recover all damages, including attorneys' fees, that Benebone has sustained on account of Pet Qwerks's unfair competition, and all gains, profits and advantages obtained by Pet Qwerks as a result of its unlawful acts. Furthermore, because Benebone has no adequate remedy at law for Pet Qwerks's ongoing unlawful conduct, Benebone is entitled to injunctive relief prohibiting Pet Qwerks from unfair competition.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Benebone respectfully requests the following relief from this Court:

A.     A judgment in favor of Benebone that Pet Qwerks has infringed the '400 Patent, '686 Patent, and Benebone's Asserted Trade Dress;

B.     A judgment declaring Pet Qwerks's infringement of the '400 Patent and Benebone's Asserted Trade Dress willful and deliberate;

C.    A permanent injunction issued by this Court enjoining Pet Qwerks and its officers, agents, servants, employees and attorneys and any and all persons in active concert or participation with Pet Qwerks, from further infringing, whether directly or indirectly, the '400 and '686 Patents and the Asserted Trade Dress; from committing any other unfair business practices directed toward obtaining for themselves the business and customers of Benebone; and from committing any other unfair business practices directed toward devaluing or diminishing the brand or business of Benebone; or alternatively, a judicial decree that Defendant pays an ongoing royalty in an amount to be determined for continued infringement after the date of judgment;

D.    An order requiring that Pet Qwerks recall from any distributors and retailers and to deliver to Benebone for destruction all remaining inventory of all Accused Products and related items, including all advertisements, promotional and marketing materials therefore, as well as means of making the same;

E.    An order requiring Pet Qwerks to file with this Court and serve on Benebone within thirty (30) days after entry of the injunction, a report in writing and under oath setting forth the manner in which Pet Qwerks complied with the injunction.

F.    That Benebone be awarded damages adequate to compensate Benebone for Pet Qwerks' wrongful conduct described herein, including its infringement of the '400 and '686 Patents and its infringement of the Asserted Trade Dress, including Benebone's profits lost as a result of infringement of the '400 and '686 Patents and Asserted Trade Dress, and that the damages be enhanced due to the willfulness of the infringement of the '400 Patent, in accordance with 35 U.S.C. § 284 and/or § 289, and15 U.S.C. § 1117;

G.    That Benebone be awarded its costs and attorney's fees, pursuant to 35 U.S.C. § 285 and U.S.C. § 1117;

-32-
COMPLAINT

H.     A judgment declaring this case to be "exceptional" under 35 U.S.C. § 285;

I.      A judgment trebling any damages award pursuant to 15 U.S.C. § 1117;

J.      An award of punitive damages pursuant to California Civil Code § 3294;

K.     An award restitution relief against Defendants and in favor of Plaintiff, including disgorgement of wrongfully obtained profits and any other appropriate relief;

L.      An award an assessment and award of pre- and post-judgment interest on all damages awarded; and

That Benebone be awarded such other and further relief as the Court deems just and equitable.

DATED:  May 4, 2020                    By: /s/ *Kenneth G. Parker*

HAYNES AND BOONE, LLP
Kenneth G. Parker
kenneth.parker@haynesboone.com
Jason T. Lao
Jason.lao@haynesboone.com
Andrea Levenson
Andrea.levenson@haynesboone.com
600 Anton Boulevard, Suite 700
Costa Mesa, California 92626
Telephone: (949) 202-3000
Facsimile: (949) 202-3001

HAYNES AND BOONE, LLP
Joseph Lawlor
Joseph.lawlor@haynesboone.com
30 Rockefeller Plaza, 26th Floor
New York, NY 10112
Telephone: (212) 659-7300
Facsimile: (214) 918-8989

*Attorneys for Plaintiff*

1

## **DEMAND FOR JURY TRIAL**

2

        Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, and Civil Local

3

Rule 38-1, Benebone hereby demands trial by jury on all issues raised by this

4

Complaint.

5

DATED:  May 4, 2020                    By: /s/ *Kenneth G. Parker*

6

                                                HAYNES AND BOONE, LLP
7
                                                Kenneth G. Parker
                                                kenneth.parker@haynesboone.com
8
                                                Jason T. Lao
                                                Jason.lao@haynesboone.com
9
                                                Andrea Levenson
                                                Andrea.levenson@haynesboone.com
10
                                                600 Anton Boulevard, Suite 700
                                                Costa Mesa, California 92626
11
                                                Telephone: (949) 202-3000
                                                Facsimile: (949) 202-3001

12
                                                HAYNES AND BOONE, LLP
13
                                                Joseph Lawlor
                                                Joseph.lawlor@haynesboone.com
14
                                                30 Rockefeller Plaza, 26th Floor
                                                New York, NY 10112
15
                                                Telephone: (212) 659-7300
                                                Facsimile: (214) 918-8989

16
                                                *Attorneys for Plaintiff*

17

18

19

20

21

22

23

24

25

26

27

28