UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENEBONE LLC,<br><br>Plaintiff,<br><br>v.<br><br>PET QWERKS, INC.,<br><br>Defendant. | Case No. 8:20-cv-00850-AB (AFMx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PET QWERKS, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

## I. INTRODUCTION

Before the Court is Defendant Pet Qwerks, Inc.'s motion to dismiss Plaintiff Benebone LLC's First Amended Complaint. ("Mot.," Dkt. No. 24.) Plaintiff filed an opposition ("Opp'n," Dkt. No. 28), and Defendant filed a reply ("Reply," Dkt. No. 30). The Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. The hearing set for September 4, 2020 is hereby **VACATED**. For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

//

//

## II. BACKGROUND

The operative First Amended Complaint ("FAC," Dkt. No. 14) alleges as follows: Plaintiff designs, manufactures, markets, and sells a line of high-quality nylon dog chew toys under the Benebone brand. (FAC ¶¶ 2, 5, 29–35.) Plaintiff sells four main products, two of which are relevant to this action: the Wishbone and the Maplestick / Bacon Stick. (*Id.* ¶¶ 7, 42.) Plaintiff has protected its unique, identifiable toy designs through design patents and trademarks. (*Id.* ¶ 65.)

The Wishbone embodies U.S. Design Patent No. D690,897 (the "'D897 Patent"), which the U.S. Patent and Trademark Office issued to Plaintiff. (*Id.* ¶¶ 66–67; *see also id.* Ex. 3, Dkt. No. 14-3 ('D897 Patent).) Plaintiff alleges the Wishbone's distinctive trade dress consists of the following elements: "brown color"; "non-uniform marbling and/or speckling in the surface coloring"; "a unique curved shape such that the chew sits on a flat surface creating a distinctive look with most or all of the elongated portion of the toy not touching the flat surface"; "a unique curved shape such that when inverted on a flat surface, portions of the two parallel arms lie flat on the surface and at least two nubs are elevated"; "nubs on its ends that are circular or near circular"; "two prongs extending at symmetrical angles from a single central prong to form a Y shape"; "a textured look with rounded edges"; "nylon material"; "cardboard packaging that surrounds the center of the product, but leaves much of the product exposed and viewable"; "simple cardboard package that folds like a tent and supports the weight of the product from a peg"; "use of white and green in product packaging"; "made in the USA logo"; "'real bacon' flavor"; and "the Benebone name." (*Id.* ¶ 43.)

The Maplestick / Bacon Stick embodies U.S. Design Patent Nos. D870,400 (the "'D400 Patent") and D871,686 (the "'D686 Patent"), which the U.S. Patent and Trademark Office issued to Plaintiff. (*Id.* ¶¶ 68–69; *see also id.* Exs. 1–2, Dkt. Nos. 14-1 to -2 ('D400 Patent and 'D686 Patent).) Plaintiff avers the Maplestick / Bacon Stick's trade dress consists of: "brown color"; "non-uniform marbling and/or

speckling in the surface coloring"; "curved shape"; "nubs in a Y shape at one end, juxtaposed with nubs at the other end such that the bone sits on a flat surface creating a distinctive look with at least one nub pointing upward and most or all of the elongated portion of the bone not touching the flat surface"; "cylindrical nubs"; "non-tapered nubs"; "nubs with flat ends"; "nubs that are roughly 1/3 or less of the length of the shaft of the bone, giving an elongated overall appearance"; "a textured look"; "cardboard packaging that surrounds the center of the product, but leaves much of the product exposed and viewable"; "simple cardboard package that folds like a tent and supports the weight of the product from a peg"; "use of white and green in product packaging"; "made in the USA logo"; "'real bacon' flavor"; and "the Benebone name." (*Id.* ¶ 46.)

Defendant sells a wide range of dog toys. (*Id.* ¶¶ 70–73.) Three of Defendant's products or product lines are at issue: First, Defendant introduced a line of products called the Flavorit BarkBone and Bacon BarkBone, which have "real bacon" flavoring, brown coloring, knobs on their ends, and curved bodies—traits Plaintiff claims are confusingly similar to the Benebone Wishbone. (*Id.* ¶¶ 77–83.) Second, about a year after Plaintiff introduced its Maplestick / Bacon Stick, Defendant introduced the BarkBone Stick, which has a similar straight center, equal branches at both ends, branches with cylindrical cutoffs lacking a taper, minimal green-and-white cardboard packaging surrounding the center of the product, and "real bacon" flavoring. (*Id.* ¶¶ 87–88, 95–96.) The product packaging and marketing materials for the BarkBone Stick also allegedly emphasize the product's similarity to the Benebone Maplestick / Bacon Stick. (*Id.* ¶¶ 89–97.) Finally, Defendant launched a product called the Wish BarkBone, allegedly similar to the Benebone Wishbone in its raised center, bacon flavor, made in USA logo, brown color, prominent use of white and green, BarkBone branding, and cardboard packaging that surrounds the center of the product that folds like a tent and supports the weight of the product from a peg. (*Id.* ¶¶ 103–07.) Plaintiff avers that consumers confuse all three of Defendant's product

lines for Plaintiff's products and presents examples from social media of purported actual confusion. (*Id.* ¶¶ 84–86, 100–02, 108–09.)

Plaintiff brings the following claims: (1) infringement of the ’D400 Patent; (2) infringement of the ’D686 Patent; (3) infringement of the ’D897 Patent; (4) federal trade dress infringement and false designation of origin; (5) common law trade dress infringement; (6) unfair competition in violation of California Business and Professions Code section 17200; and (7) common law unfair competition. (*Id.* ¶¶ 113–60.)

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires a plaintiff to present a “short and plain statement of the claim showing that the pleader is entitled to relief.” Fed. R. Civ. P. 8(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a pleading for “failure to state a claim upon which relief can be granted.” Fed. R. Civ. P. 12(b)(6).

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough factual detail to “give the defendant fair notice of what the. . . claim is and the grounds upon which it rests.” *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint “must contain sufficient factual matter, accepted as true, to ‘state a claim to relief that is plausible on its face.’” *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A plaintiff's “factual allegations must be enough to raise a right to relief above the speculative level.” *Twombly*, 550 U.S. at 555. “The plausibility standard is not akin to a ‘probability requirement,’ but it asks for more than a sheer possibility that a defendant has acted unlawfully.” *Id*. Labels, conclusions, and “a formulaic recitation of the elements of a cause of action will not do.” *Twombly*, 550 U.S. at 555.

A complaint may be dismissed under Rule 12(b)(6) for the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When ruling on

a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (2009) (internal quotation marks omitted).

A court generally may not consider materials other than facts alleged in the complaint and documents that are made a part of the complaint. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). However, a court may consider materials if (1) the authenticity of the materials is not disputed and (2) the plaintiff has alleged the existence of the materials in the complaint or the complaint "necessarily relies" on the materials. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). The court may also take judicial notice of matters of public record outside the pleadings and consider them for purposes of the motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Lee*, 250 F.3d at 689–90.

## IV. DISCUSSION

### A. The Court Declines to Consider Several Exhibits to the Motion

As an initial matter, the Court must determine whether it may review the exhibits Defendant submitted with the motion.

Defendant presents numerous images in its motion papers, including photographs Defendant's counsel took of the accused BarkBone products (Dkt. No. 24-1 ¶¶ 2, 11, 15 & Exs. A, J, N), and screenshots from websites accessed by Defendant's counsel (Dkt. No. 24-1 ¶¶ 10, 12–14, 21 & Exs. I, K–M, T). Plaintiff argues that it has not had an opportunity to test the veracity of the images, and that the Court should not consider these images at the motion to dismiss stage. (Opp'n at 20–21.) The images Defendant submitted are outside the limited scope of material that may be considered on a 12(b)(6) motion, and Plaintiff calls the images into question. Accordingly, the Court does not consider these images in its evaluation of the motion. *See Five Star Gourmet Foods, Inc. v. Ready Pac Foods, Inc.*, No. 5:18-cv-2436 DDP (KKx), 2019 WL 1260634, at *3 (C.D. Cal. Mar. 18, 2019) (declining to consider

photographs of accused product presented for the first time in motion to dismiss).

Defendant also presents copies of several design patents it contends are judicially noticeable as prior art. (Dkt. No. 24-1 ¶¶ 5–9, 17–20 & Exs. D–H, P–S; *see* Reply at 8.) Plaintiff asks the Court not to consider these, arguing that the Court's inquiry on a motion to dismiss should not extend to the prior art. (Opp'n at 21.) The authority Plaintiff cites refutes its argument. *See simplehuman, LLC v. iTouchless Housewares & Prods.*, No. 19-cv-02701-HSG, 2019 WL 5963245, at *4 (N.D. Cal. Nov. 13, 2019) (discussing prosecution history and prior art on motion to dismiss). The Court takes judicial notice of the prior art. *See Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 954 n.27 (Fed. Cir. 1993) (taking judicial notice of publicly accessible patent); *Colt Int'l Clothing Inc. v. Quasar Science, LLC*, 304 F. Supp. 3d 891, 892 (C.D. Cal. 2018) (same).

Finally, Defendant submits Plaintiff's design patents as exhibits. (Dkt. No. 24-1 ¶¶ 3–4, 16 & Exs. B–C, O.) Plaintiff already presented the patents as exhibits to the FAC, so the Court may consider them. (FAC Exs. 1–3, Dkt. Nos. 14-1 to -3.)

**B. Plaintiff Adequately Pleaded Its Design Patent Infringement Claims**

A design patent is limited to the novel, ornamental features of the patented design. *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). The test for design patent infringement is the "ordinary observer test." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008). To prevail on a design patent infringement claim, a plaintiff must show that the claimed design and the design of the accused product are substantially the same in the eyes of an ordinary observer giving such attention as a purchaser usually gives. *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1363 (Fed. Cir. 2013) (citing *Gorham Co. v. White*, 81 U.S. 511, 528 (1871)). Infringement is evaluated by determining whether "the deception that arises is a result of the similarities in the overall design, not of similarities in ornamental features in isolation." *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006); *accord Ethicon Endo-Surgery, Inc.*

*v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) ("Differences . . . must be evaluated in the context of the claimed design as a whole, and not in the context of separate elements in isolation.").

The determination of infringement of a design patent is a question of fact. *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010). Accordingly, courts ordinarily do not dismiss a sufficiently pleaded patent design infringement claim "based on a comparison of the subject designs," *Deckers Outdoor Corp. v. J.C. Penney Co.*, 45 F. Supp. 3d 1181, 1186 (C.D. Cal. 2014), "unless the claimed design and accused product are so plainly dissimilar that it is implausible that an ordinary observer would confuse them." *Enerlites, Inc. v. Century Prods. Inc.*, No. SACV 18-839 JVS (KESx), 2018 WL 4859947, at *3 (C.D. Cal. Aug. 13, 2018) (collecting cases).

Defendant argues that the accused BarkBone products are sufficiently dissimilar from Benebone's design patents that it is implausible an ordinary observer familiar with the prior art could find the designs substantially the same. (Mot. at 7–16.) The Court disagrees.

**1. The BarkBone Stick ('D400 and 'D686 Patents)**

Defendant argues that, based on a side-by-side comparison of the BarkBone Stick and the figures in the 'D400 and 'D686 Patents, the accused product is plainly dissimilar from the patented designs. (Mot. at 7–11.) Although Defendant illustrates its argument by highlighting ornamental features of the BarkBone Stick it claims are dissimilar from the design patents (*id.* at 10–11), the question governing the infringement inquiry is one of similarity in *overall* design. *See Ethicon Endo-Surgery*, 796 F.3d at 1335. The Court cannot conclude that the overall designs are so plainly dissimilar as to warrant dismissal at the pleading stage. Based on the comparison images presented in the FAC, it is not implausible that an ordinary consumer could mistake the BarkBone Stick for the patented designs. (FAC ¶¶ 115, 124.)

The designs are not identical—for example, the BarkBone Stick has three-pronged ends with slight tapering, whereas the ’D400 and ’D686 Patents present two-pronged ends with no tapering—but identity is not necessary to allege, let alone prove, design patent infringement. *See Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 739 F.3d 694, 701 (Fed. Cir. 2014) (“[T]he test for design patent infringement is not identity, but rather sufficient similarity . . . .”). An ordinary observer viewing the BarkBone Stick’s long, cylindrical body with relatively short, cylindrical branches of similar size, with each branch sitting at equally obtuse angles relative to the body, plausibly could find the product substantially the same as the ’D400 and ’D686 Patent designs.

| U.S. Design Patent No. D870,400 | Defendant’s Pet Chew Toy |
| --- | --- |
|  FIG. 4 |   |
| **U.S. Design Patent No. D871,686** | **Defendant’s Pet Chew Toy** |
|  FIG. 4 |   |

| | | | | |
|---|---|---|---|---|
|  |  FIG. 6 |  |  |  |
| US D501698 | US D607618 | US D636540 | US 6360693 | US D501699 |
| Inventor McNamara | Inventor Rutherford | Inventor McCann | Inventor Ross Eugene Long III | Inventor McNamara |
| Priority Date 09/23/2003 | Priority Date 09/15/2006 | Priority Date 01/19/2010 | Priority Date 12/2/1999 | Priority Date 09/23/2003 |

Defendant contends that a review of the prior art it presents further illustrates the differences between the BarkBone Stick and the claimed designs. (Mot. at 11–13.) Several of the designs highlighted by Defendant feature branches and branch placements with an organic, tree branch-like overall design; an ordinary observer plausibly could observe that the BarkBone Stick and the Benebone designs share a more abstract overall design with deliberate, symmetrical branch placement. Although Defendant also presents prior art designs with three-pronged ends, the Court is unwilling to conclude at the pleading stage that the extra prong renders the overall design of the BarkBone Stick plainly dissimilar from Benebone's designs. In short, the BarkBone Stick is not so plainly dissimilar to the Benebone designs that it is implausible that an ordinary observer familiar with the prior art would confuse them.

The Court **DENIES** Defendant's motion to dismiss the first and second claims for relief.

**2. The Wish BarkBone ('D897 Patent)**

Likewise, as demonstrated by the comparison images presented in the FAC, the Wish BarkBone is not so plainly dissimilar from the 'D897 Patent that dismissal at the pleading stage is appropriate. (FAC ¶¶ 106, 130.)

| <u>U.S. Design Patent No. D690,897</u> | <u>Defendant's Pet Chew Toy</u> |
|---|---|
|  |   |

Both the accused product and the design patent possess Y-shaped bodies with a slight curve such that, when resting on the three ends, the vertex joining the ends is raised off the ground. The prongs of the Y are cylindrical and end with nubs thicker than the prong bodies. Again, despite Defendant's attempt to distinguish individual ornamental elements of the accused design (Mot. at 13–14), it is not implausible that an ordinary consumer could confuse the Wish BarkBone with the 'D897 Patent design given the similarities in overall design. *See Ethicon Endo-Surgery*, 796 F.3d at 1335.

The prior art does not change this evaluation. (Mot. at 15–16.) It is not implausible that an ordinary observer familiar with the prior art Defendant presents could find that the Wish BarkBone, with its gently curved, Y-shaped body, cylindrical branches, and bulblike end nubs, is substantially the same as the patented design. The Court declines to conclude that the Wish BarkBone is plainly dissimilar from the Benebone design.

| | | | |
|---|---|---|---|
|   |   |  |  |
| US 4886270 | US D475816 | US D657116 | US D478937 |
| Arenson et al. | Adamson | Tkaczuk | Giles et al. |
| 02/07/1989 | 07/16/2002 | 12/21/2010 | 01/08/2002 |

The Court **DENIES** Defendant's motion to dismiss the third claim for relief.[1]

### C. Plaintiff Did Not Adequately Plead Its Trade Dress Infringement Claims

"A product's 'trade dress' is its total image and overall appearance; it includes 'features such as size, shape, color, color combinations, texture, or graphics.'" *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1044 n.2 (9th Cir. 1998) (quoting *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 613 (9th Cir. 1989)). To state a claim for trade dress infringement, a plaintiff must allege facts showing that "(1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products." *Art Attacks Ink, LLC v. MGA Entm't, Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009). Trade dress claims under California common law are subject to the same analysis as federal trade dress claims. *See Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, No. CV 15-769 PSG (SSx), 2015 WL 12731929, at *3 (C.D. Cal. May 8, 2015) (citing, *inter alia*, *Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1100 (9th Cir. 2004)).

Defendant argues Plaintiff's asserted trade dress exceeds the scope of trade dress protections. (Mot. at 16–17.) It also argues that Plaintiff fails to identify which Pet Qwerks products are the subject of the claim. (*Id.* at 17–18.) Aside from the general federal pleading standard, Defendant offers no authority supporting dismissal of the claim on these grounds. (*See id.* at 18 (citing *Iqbal*, 556 U.S. at 678).) Plaintiff described with specificity the elements of the trade dress associated with its

---

[1] Plaintiff argues in its brief that it sufficiently stated a claim that additional Pet Qwerks products, the Flavorit BarkBone and Bacon BarkBone, infringe the 'D897 Patent. (Opp'n at 18–19.) Plaintiff does not present this theory in the FAC. (*See* FAC ¶¶ 128–35 (alleging infringement of the 'D897 Patent only as to the Wish BarkBone).) Because Plaintiff does not allege patent infringement as to the Flavorit BarkBone and Bacon BarkBone in the operative pleading, the Court does not decide whether Plaintiff plausibly can plead such a claim.

Maplestick / Bacon Stick and Wishbone products, provided images demonstrating the asserted trade dress, and stated relevant factual allegations regarding three allegedly infringing Pet Qwerks product lines. (*See, e.g.*, FAC ¶¶ 43, 46, 84, 95, 104.) These allegations are sufficient to put Defendant on notice of Plaintiff's trade dress claim. *See Lepton Labs, LLC v. Walker*, 55 F. Supp. 3d 1230, 1240 (C.D. Cal. 2014) ("So long as a plaintiff has alleged a complete recitation of the concrete elements of its alleged trade dress, it should be allowed to proceed."); *see also, e.g.*, *Mercado Latino, Inc. v. Indio Prods., Inc.*, No. CV 13-01027 DDP (RNBx), 2017 WL 1356315, at *2 (C.D. Cal. Apr. 11, 2017) (rejecting defendant's contention that trade dress was too broadly described because the argument raised an issue of fact, and declining to dismiss claim given plaintiff's "relatively detailed description of its claimed trade dress" and "inclusion of images of the claimed trade dress" in its pleading).

Defendant contends Plaintiff has not pleaded any facts establishing distinctiveness or secondary meaning. (Mot. at 21–24.) Although Defendant highlights the lack of evidence of secondary meaning presented in the operative FAC (*see, e.g.*, *id.* at 23–24 (noting Plaintiff's failure to submit a consumer survey in its pleading)), such evidence is not necessary at this stage in the litigation. *See Mercado Latino*, 2017 WL 1356315, at *3 ("Plaintiff need not make any showing or provide any evidence [of secondary meaning] at the pleading stage." (citing *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987)). Plaintiff pleads allegations probative of secondary meaning, including praise for Benebone's products' design language, shape, and flavor in print and television media; Plaintiff's significant investment in digital marketing and resulting consumer engagement connecting the company and its product design; consumers' association of the trade dress with Benebone products; the products' established status in the market; and Defendant's purported "wholesale copying" of Plaintiff's trade dress. (*E.g.*, FAC ¶¶ 52–64, 110, 139.) If proven, these facts could demonstrate secondary meaning. *See Filipino Yellow Pages, Inc. v. Asian J. Publ'ns, Inc.*, 198 F.3d 1143, 1151 (9th Cir.

1999) ("Secondary meaning can be established in many ways, including (but not limited to) direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant."); *see also, e.g.*, *Bobrick Washroom Equip., Inc. v. Am. Specialties Inc.*, No. CV 10-6938-SVW (PLAx), 2010 WL 11462854, at *3 (C.D. Cal. Dec. 15, 2010) (finding plaintiff adequately pleaded secondary meaning, "although mostly through conclusory statements").

Defendant asserts that Plaintiff has not adequately pleaded likelihood of confusion. (Mot. at 24–27.) Again, to the extent Defendant argues Plaintiff has not provided sufficient evidence of likelihood of confusion (*see, e.g.*, *id.* at 26–27 (arguing that a certain allegation is "not evidence of actual confusion")), such proof is not yet necessary. *See Mercado Latino*, 2017 WL 1356315, at *4 ("Plaintiff is not required to provide any evidence [of likelihood of confusion] at the pleading stage."). Plaintiff has set forth numerous allegations probative of likelihood of confusion, including the products' similar names, shapes, packaging, and flavoring; Pet Qwerks and Benebone's similar digital marketing strategies and distribution channels; and PetQwerks' alleged intent to confuse consumers. (*E.g.*, FAC ¶¶ 4, 10, 75, 79–80, 83, 89–99, 104–05, 110.) Further, Plaintiff identifies several alleged instances of consumers' actual confusion of the accused BarkBone products for Benebone's products. (*Id.* ¶¶ 84–86, 100–02, 108–09.) At the pleading stage, this is sufficient. *See, e.g.*, *Orgain, Inc. v. N. Innovations Holding Corp.*, No. 8:18-cv-01253-JLS-ADS, 2018 WL 7504409, at *6 (C.D. Cal. Dec. 6, 2018) (concluding likelihood of confusion was adequately pleaded where plaintiff provided "ample allegations of likelihood of confusion, including numerous instances of actual confusion").

Defendant contends that Plaintiff has not sufficiently alleged the

nonfunctionality of its products' trade dress. (Mot. at 18–21.)[2] The only allegation relating to nonfunctionality Plaintiff identifies is a single conclusory assertion that the features of the trade dress are not functional. (Opp'n at 10 (citing FAC ¶ 138).) Given "the standard pleading requirement that plaintiffs support the elements of their claims with more than conclusory statements," Plaintiff must allege with more specificity "*how* [its] trade dress is nonfunctional." *Deckers*, 2015 WL 12731929, at *4; *see, e.g.*, *Kellytoy Worldwide, Inc. v. Hugfun Int'l, Inc.*, No. CV-19-07652-MWF (MAAx), 2019 WL 8064073, at *5 (C.D. Cal. Dec. 4, 2019) ("Rule 8 does require sufficient facts to 'state a claim to relief that is plausible on its face,' including how the [t]rade [d]ress is non-functional." (quoting *Iqbal*, 556 U.S. at 678)); *Green Crush LLC v. Paradise Splash I, Inc.*, No. SACV 17-01856-CJC (JDEx), 2018 WL 4940824, at *4 (C.D. Cal. Mar. 8, 2018) (dismissing claim where plaintiff "pled no facts to support the legal conclusion that its alleged trade dress is non-functional"). This element of the claim is not adequately pleaded.

Accordingly, the Court **GRANTS** Defendant's motion to dismiss the fourth and fifth claims for relief on the basis that Plaintiff failed to plead sufficient factual allegations supporting the nonfunctionality of the asserted trade dress. Because the pleading deficiency appears to be curable, the Court gives Plaintiff leave to amend.

**D. Plaintiff Has Not Adequately Pleaded Its Unfair Competition Claims**

"[T]rade dress infringement claims under the Lanham Act and unfair competition claims under California Business and Professions Code section 17200 are inextricably linked." *Millennium Labs., Inc. v. Ameritox, Ltd.*, 817 F.3d 1123, 1131

---

[2] Defendant goes further, arguing that some features of Plaintiff's asserted trade dress are functional. (Mot. at 20–21; Reply at 12.) Deciding whether Plaintiff's asserted trade dress is functional is not appropriate at this point in the litigation. *See SCG Characters LLC v. Telebrands Corp.*, No. CV 15-00374 DDP (AGRx), 2015 WL 4624200, at *7 (C.D. Cal. Aug. 3, 2015) (collecting cases declining to resolve functionality inquiry at motion to dismiss stage).

(9th Cir. 2016); *see also Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) (“[S]tate common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are substantially congruent to claims made under the Lanham Act.” (citation and quotation marks omitted)).

Plaintiff’s unfair competition claims are predicated on Defendant’s alleged infringement of Benebone’s trade dress. (*See* FAC ¶¶ 155, 158.) In light of the Court’s determination that Plaintiff has not adequately pleaded that its trade dress infringement claims, the Court **GRANTS** Defendant’s motion to dismiss the sixth and seventh claims for relief. *See Pellerin v. Honeywell Int’l, Inc.*, 877 F. Supp. 2d 983, 992 (S.D. Cal. 2012) (noting that an unfair competition claim “must be dismissed if the plaintiff has not stated a claim for the predicate acts upon which he bases the claim”); *see also, e.g., Sugarfina, Inc. v. Sweet Pete’s LLC*, No. 17-cv-4456-RSWL-JEM, 2017 WL 4271133, at *6 (C.D. Cal. Sept. 25, 2017) (dismissing unfair competition claims to the extent the claims were premised on inadequately pleaded trade dress infringement claim).

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant’s motion to dismiss Plaintiff’s fourth claim for federal trade dress infringement, fifth claim for common law trade dress infringement, sixth claim for statutory unfair competition, and seventh claim for common law unfair competition. The Court **DENIES** the motion to dismiss in all other respects. Any amended complaint must be filed within fourteen (14) days of the date of issuance of this order.

**IT IS SO ORDERED.**

Dated: September 3, 2020

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE