1  Jason T. Lao (State Bar No. 288161)
     jason.lao@haynesboone.com
2  Andrea Levenson (State Bar No. 323926)
     andrea.levenson@haynesboone.com
3  **HAYNES AND BOONE, LLP**
4  600 Anton Boulevard, Suite 700
   Costa Mesa, California 92626
5  Telephone: (949) 202-3000
   Facsimile: (949) 202-3001

6  Richard Rochford (*pro hac vice* application forthcoming)
7     richard.rochford@haynesboone.com
   Joseph Lawlor (admitted *pro hac vice*)
8     joseph.lawlor@haynesboone.com
   **HAYNES AND BOONE, LLP**
9  30 Rockefeller Plaza, 26th Floor
   New York, NY 10112
10 Telephone: (212) 659-7300
   Facsimile: (212) 918-8989

11 *Attorneys for Plaintiff Benebone LLC*

12             **UNITED STATES DISTRICT COURT**

13             **CENTRAL DISTRICT OF CALIFORNIA**

14 BENEBONE LLC,                     Case No.  8:20-cv-00850-AB-AFM

15          Plaintiff,               **THIRD AMENDED COMPLAINT FOR:**
16     v.                            **(1) INFRINGEMENT OF U.S. PATENT NO. D870,400;**
17 PET QWERKS, INC. and              **(2) INFRINGEMENT OF U.S. PATENT NO. D871,686;**
   DOSKOCIL MANUFACTURING            **(3) INFRINGEMENT OF U.S. PATENT NO. D690,897;**
18 COMPANY, INC. d/b/a/              **(4) TRADE DRESS INFRINGEMENT;**
   PETMATE,                          **(5) UNFAIR COMPETITION**
19
20          Defendants.             **DEMAND FOR JURY TRIAL**
21
22
23
24
25
26
27
28

Plaintiff Benebone LLC ("Benebone" or "Plaintiff"), by and through its counsel, brings this action against Defendants Pet Qwerks, Inc. ("Pet Qwerks") and Doskocil Manufacturing Company, Inc. d/b/a Petmate ("Petmate," collectively "Defendants") and hereby alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action to remedy acts of: (1) infringement of U.S. Design Patent No. D870,400 ("the '400 Patent"); (2) infringement of U.S. Design Patent No. D871,686 ("the '686 Patent"); (3) infringement of U.S. Design Patent No. D690,897 ("the '897 Patent"); (4) trade dress infringement under the Lanham Act Section 43(a), 15 U.S.C. § 1125(a); (5) unfair competition under California Business and Professions Code § 17200, *et seq.*; and (6) unfair competition under the common law of California. Copies of the '400 Patent, '686 Patent, and '897 Patent are attached as Exhibits A, B, and C, respectively.

2.      Benebone is a family-owned business that brings this action because Defendants manufacture, market, and sell knock-offs of Benebone's well-known dog chew toys.  The unique, modern design of Benebone's products is inseparable from its brand.

3.      On information and belief, Petmate is owned by a multi-billion-dollar hedge fund and sells a variety of pet products under various brands.  In or about August 2020, Petmate purchased Pet Qwerks and now sells Pet Qwerks'-branded products. Defendants are selling knock off products under the "BarkBone" sub-brand to deceive consumers by embodying not only Benebone's patent-protected product design, but also the overall look, feel, and impression created by Benebone's unique trade dress.

4.      Just three days after the original complaint was filed in this action – and one day after it was served – Pet Qwerks introduced yet another infringing product, the "Wish BarkBone," which precipitated the First Amended Complaint.  The Wish BarkBone clearly knocks off the Benebone Wishbone.  Indeed, despite only being on

1    the market for a few months, there is already *incontrovertible evidence of actual*
2    *consumer confusion*.

3        5.      The infringing Wish BarkBone follows on the heels Pet Qwerks'
4    BarkBone Stick, which knocks off the Benebone Maplestick / Bacon Stick.  Moreover,
5    shortly after its acquisition of Pet Qwerks, Petmate is now introducing a new infringing
6    version of BarkBone Stick (this time with four nubs on each end, rather than three).

7        6.      Defendants also sell the infringing curved Bacon BarkBone and Flavorit
8    BarkBone (together, the "Curved BarkBone"), which incorporate unique elements of
9    the Benebone Wishbone.  Defendants' behavior paints a clear picture of their intent: to
10   create a line of chew toys, under the "BarkBone" sub-brand (which sounds confusingly
11   similar to "Benebone"), that mirror and trade on the goodwill developed by Benebone
12   in its brand and products.

13       7.      Benebone is one of the leading brands of high quality dog chew toys
14   designed and manufactured exclusively in the U.S.A. using 100% American-made
15   materials.  Benebone's products are well-known for their unique design language,
16   natural flavorings, and high-quality build.  In only seven short years, Benebone has
17   risen to a competitive level in the chew toy category, facing off against huge rivals who
18   have been present in the category for decades.

19       8.      As a direct result of its innovative and distinctive designs, Benebone
20   products have become greatly successful and have become uniquely associated with
21   Benebone as their source.  Benebone invests considerable time, effort, and money in
22   developing and protecting its reputation and intellectual property, including by
23   securing multiple design patents and trademarks for its line of products.

24       9.      Benebone only sells four main products.  Its longest-selling and best-
25   selling product is the Wishbone.  Its next best-selling line is the Maplestick / Bacon
26   Stick.  The Benebone brand is synonymous with its unique modern design language,
27   its prominent use of green and white in product packaging, its unique bacon flavoring,
28   and the fact that its products are made in the USA, among other things.

10.    Pet Qwerks pre-dates Benebone by several decades, but prior to Benebone entering the market, Pet Qwerks sold rubber balls and other typically-shaped chew toys.  After Benebone's introduction and success against established players in the industry, Pet Qwerks embarked on a campaign to imitate Benebone's design, product packaging, and marketing materials in a scheme to deceive consumers and distort the marketplace.  Defendants have continued this campaign after Petmate's acquisition, with an aim of injuring Benebone while increasing Petmate's revenues.

11.    Pet Qwerks' wrongful acts started with its March 2017 introduction of a Curved BarkBone line that imitates the curved Benebone Wishbone design.  In July 2018, Benebone introduced its Maplestick / Bacon Stick, and Pet Qwerks introduced its infringing imitation, the "BarkBone Stick" just a few months later.  Just days after this lawsuit was filed, Pet Qwerks' introduced an imitation of the Benebone Wishbone, called the "Wish BarkBone."  Now, Petmate has not only acquired the Pet Qwerks brand, but also introduced a new infringing version of the BarkBone Stick.

12.    Each of Defendants' products that infringes Benebone's trade dress and patents (the "Infringing Products") is sold under the "BarkBone" sub-brand, in yet another attempt by Defendants to sow customer confusion due to its similarity to "Benebone."  In addition to knocking off Benebone's patented designs to imitate Benebone's design language, these products also utilize similar flavors, packaging design and color, marketing methods and materials, and made in USA symbols.  The cumulative effect of Defendants' wrongful tactics is to create a sub-brand that does not just compete with Benebone, but instead is indistinguishable from Benebone in the minds of consumers.

13.    The likelihood of consumer confusion is not merely theoretical: as detailed below, Benebone has discovered evidence of actual consumer confusion with respect to *each* of the Infringing Products.

14.    Benebone sought to avoid litigation and resolve this matter amicably, and it has written to Pet Qwerks repeatedly in an effort to do so, but the parties were unable

to resolve the dispute.  Defendants' willful infringement is apparent.  Benebone brings this civil action to enforce its rights and protect its brand, alleging claims for patent infringement, trade dress infringement, and violations of California statutory and common law.

## THE PARTIES

15.    Plaintiff Benebone is a limited liability company organized and existing under the laws of the State of Connecticut, with its principal place of business located at 207 Meadow Road, Edison, NJ 08817.

16.    On information and belief, Pet Qwerks is a corporation organized and existing under the laws of California, with its principal place of business located at 9 Studebaker Dr., Irvine, CA 92618.

17.    On information and belief, Petmate is a corporation organized and existing under the laws of Texas, with its principal place of business located at 2300 E Randol Mill Rd., Arlington, TX 76011.

## JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332 (diversity of citizenship), 28 U.S.C. § 1338(a) (civil action arising under any Act of Congress relating to patents), and 15 U.S.C. § 1121 (any action arising under the Lanham Act), 28 U.S.C. § 1338(b) (action asserting claim of unfair competition joined with a substantial and related claim  under the trademark laws).  This Court has supplemental jurisdiction over the remaining state law claims under 28 U.S.C. §1367 because the claims are so related to Benebone's claims under federal law that they derive from a common nucleus of operative fact and form part of the same case or controversy.

19.    This Court has general and specific personal jurisdiction over Defendants in this case because Pet Qwerks is a California corporation, maintains its principal place of business in this judicial district, and on information and belief, has committed and continues to commit acts of patent infringement and false advertising/implied passing

off within this judicial district.  Petmate acts through Pet Qwerks in this judicial district, and on information and belief, has committed and continues to commit acts of patent infringement and false advertising/implied passing off within this judicial district.

20.    Either directly, or through its agents and/or affiliates, Defendants have conducted and continues to conduct substantial and routine business in this judicial district, including, on information and belief, by marketing, offering to sell, and/or selling infringing products in this judicial district and/or committing false advertising/implied passing off within this judicial district.

21.    Defendants' acts have caused injury to Plaintiff within this judicial district.

22.    Venue is proper in the Central District of California under the general federal venue statute, 28 U.S.C. §§ 1391(b), (c), and (d) because, among other reasons, Pet Qwerks is organized and existing under the laws of the State of California, maintains a physical place of business in this judicial district, and on information and belief, Defendants have committed acts of patent infringement and/or false advertising/implied passing off within this judicial district.  In addition, and in the alternative, venue is proper in this judicial district under the specific venue provision relating to patent infringement cases, 28 U.S.C. § 1400(b) because Defendants have committed acts of infringement in this judicial district and have a regular and established place of business in this judicial district.

## **PATENTS-IN-SUIT**

23.    On December 17, 2019, the U.S. Patent and Trademark Office duly and legally issued the '400 Patent entitled "Pet Chew Toy."  A true and correct copy of the '400 Patent is attached as Exhibit A.

24.    The '400 Patent is valid and enforceable.

25.    Benebone is the lawful owner by assignment of all rights, title and interest in and to the '400 Patent, possesses all rights of recovery under the '400 Patent, and has standing to sue for infringement of the '400 Patent.

26.     On December 31, 2019, the U.S. Patent and Trademark Office duly and legally issued the '686 Patent entitled "Pet Chew Toy."  A true and correct copy of the '686 Patent is attached as Exhibit B.

27.     The '686 Patent is valid and enforceable.

28.     Benebone is the lawful owner by assignment of all rights, title and interest in and to the '686 Patent, possesses all rights of recovery under the '686 Patent, and has standing to sue for infringement of the '686 Patent.

29.     On October 8, 2013, the U.S. Patent and Trademark Office duly and legally issued the '897 Patent entitled "Pet Chew."  A true and correct copy of the '897 Patent is attached as Exhibit C.

30.     The '897 Patent is valid and enforceable.

31.     Benebone is the lawful owner by assignment of all rights, title and interest in and to the '897 Patent, possesses all rights of recovery under the '897 Patent, and has standing to sue for infringement of the '897 Patent.

## FACTUAL BACKGROUND

### A.     Benebone's "Dogma"

32.     Benebone is a family-owned dog toy business that was established in 2012.  After spending a year on the design of a single product, the curved Wishbone, Benebone sold its first chew toy in 2013.  As dog owners and lovers, the Benebone family has always been driven to produce toys that dogs will love, while being responsible members of the dog owning community.

33.     There are seven pillars to Benebone's corporate ethos, which it refers to as its "Dogma."[1]

- Focus on Delighting Dogs
- Be Valuable to Pet Parents
- Practice Good Business

---

[1]     *Benebone* | OUR "DOGMA" (2020).  Available at:
https://www.benebone.com/our-dogma/ (Accessed: April 29, 2020).

- Nothing but the Best
- Demonstrate Generosity
- Stay Playful
- Be Human

34.    Everything Benebone does, and every product it designs and sells, is driven by these seven principles.  To demonstrate generosity, Benebone has planted deep roots in its communities and participates in events and philanthropy to further support causes that are important to Benebone and its growing base of consumers.  To be human, Benebone has kept its small family business feel, while growing into a major participant in the industry in only a few years.

35.    Several of these principles drive the design and manufacture of Benebone's dog toys.  To focus on delighting dogs, Benebone seeks to design unique but simple products dogs will love.   Specifically, Benebone's design elements revolutionized dog chew toys as they focused on a clean, modern design.  Benebone's irregular and modern designs are instantly recognizable and are inseparable from the brand itself.

36.    Practicing good business and providing "nothing but the best" means that Benebone only uses the highest quality materials.  All Benebone products are made with USA-sourced nylon and flavored with USA-sourced real ingredients—real peanuts, white meat chicken, or bacon.

37.    Benebone manufactures all of its products in several factories in New York and has been lauded for manufacturing its products in the U.S.A., in part because American-made goods are particularly sought after in the highly-competitive dog toy market.[2]  According to industry publications, "[w]hen it comes to dog treats and chews, owners these days value American-made, ethically sourced and sustainable products

2    Solid Sourcing Required (2018). Available at: http://www.petproductnews.com/December-2018/Solid-Sourcing-Required/ (Accessed: April 29, 2020).

1    made by manufacturers that are transparent about their production processes" like

2    Benebone.[3]

3            38.    Consumer preferences align neatly with Benebone's "Dogma," which has

4    led to a massive expansion of the Benebone brand in just a few years since its inception.

5    Benebone's dog toys are sold throughout the United States in retail locations from coast

6    to coast, including independent pet stores, as well as larger retailers, including Pet

7    Smart and Petco.  Benebone also sells its products through online retailers, including

8    Amazon and Chewy.

9        **B.    Benebone's Unique and Identifiable Product Design**

10           39.    Benebone has been lauded for its unique design and approach.  Each toy

11   begins with a simple directive: create something that dogs will love.  Benebone's

12   designs are the result of a time-consuming and resource-intensive process that requires

13   the coordination of designers, manufacturing, and marketing staff.

14           40.    Benebone revolutionized dog toy design with its curved Wishbone in

15   2013.  Most dog toys on the market at the time were flat, and Benebone's patented

16   curved Wishbone design marked a new era in design.  Benebone continued this concept

17   with the curved Dental Chew, a figure-8 shaped product.

18           41.    For several years, the Wishbone was Benebone's only product, and it

19   remains Benebone's best-selling product.

20           42.    The Maplestick / Bacon Stick's design followed on this market-leading

21   concept, with a modern, linear design with non-tapered cylindrical nubs on each end

22   oriented to ensure the product never lay flat on the ground.

23           43.    All Benebone designs are modern and artistic, making them instantly

24   recognizable by product design alone.  These designs make up a portion of Benebone's

25   trade dress and have become inseparable from the brand itself.

26

27   _____

28   [3]  *Id.*

44.     There are several design elements that make the Benebone's brand unique and instantly recognizable.  First, its designs are shaped to never sit flat on the surface and include arcs that add to the visual appeal of the products.  While a simple concept, this design element was revolutionary when introduced, paving the way for substantial market penetration in just a few years.  Second, Benebone's designs are modern and intentionally distant from the natural element they mimic.

45.     Benebone's designs are a family of top sellers: the Wishbone, Dental Chew, Maplestick / Bacon Stick, and Zaggler, all shown below[4]:


Wishbone


Dental Chew


Maplestick /
Bacon Stick


Zaggler

46.     The Wishbone's modern design elements make it immediately recognizable that it is not, in fact, a real bone. Benebone's trade dress in its Wishbone includes the design elements shown and discussed in this Complaint, including, but not limited to:

  a.  brown color;

  b.  non-uniform marbling and/or speckling in the surface coloring;

  c.  a unique curved shape such that the chew sits on a flat surface creating a distinctive look with most or all of the elongated portion of the toy not touching the flat surface;

  d.  a unique curved shape such that when inverted on a flat surface, portions of the two parallel arms lie flat on the surface and at least two nubs are elevated;

---

4   *Benebone* | Our Products (2020). Available at:
https://www.benebone.com/products/ (Accessed: April 29, 2020).

e.  nubs on its ends that are circular or near circular;

f.  two prongs extending at symmetrical angles from a single central prong to form a Y shape;

g.  a textured look with rounded edges;

h.  nylon material;

i.  cardboard packaging that surrounds the center of the product, but leaves much of the product exposed and viewable;

j.  simple cardboard package that folds like a tent and supports the weight of the product from a peg;

k.  use of white and green in product packaging;

l.  made in the USA logo;

m.  "real bacon" flavor; and

n.  the Benebone name.

(hereinafter, the "Wishbone Trade Dress").

47.  The Maplestick / Bacon Stick is another clear example of this design language.  While its modern and clean design takes cues from sticks, it intentionally does not look like an actual stick.  There are several key design features at work here. First, the main portion of the Maplestick / Bacon Stick is dead-straight, unlike a real stick.  Second, it has equal branches at both ends, unlike a real stick.  Third, the branches at each end are terminated in a cylindrical way, which is not found in a natural stick.

48.  Before the Maplestick / Bacon Stick was introduced, there were several other stick-themed products, most notably the Petstages Dogwood Stick Chew Toy and the Nylabone Stick Chew.  (Petstages and Nylabone are two of the largest brands in this category who have been in existence for decades.)  The below images illustrate the state of stick chew toy design before Benebone's introduction.  Both designs were

relatively flat, and both were intended to resemble real sticks.  Benebone's modern Maplestick design turned this concept on its head.[5]

 

49.     Maplestick / Bacon Stick includes the design elements shown and discussed in this Complaint, including, but not limited to:

a.  brown color;

b.  non-uniform marbling and/or speckling in the surface coloring;

c.  curved shape;

d.  nubs in a Y shape at one end, juxtaposed with nubs at the other end such that the bone sits on a flat surface creating a distinctive look with at least one nub pointing upward and most or all of the elongated portion of the bone not touching the flat surface;

e.  cylindrical nubs;

f.  non-tapered nubs;

g.  nubs with flat ends;

h.  nubs that are roughly 1/3 or less of the length of the shaft of the bone, giving an elongated overall appearance;

_____

5   On the left is: *Strong Chew Real Wood Stick Chew Toy, Maple Bacon | Nylabone* (2020). Available at: https://www.nylabone.com/products/product-type/chew-toys/strong-chew/strong-chew-real-wood-stick-toy (Accessed: April 29, 2020). On the right is: *Dogwood* (2020). Available at: https://petstages.outwardhound.com/dogwood-by-petstage.html (Accessed: April 29, 2020).

1
         i.  a textured look;

2
         j.  cardboard packaging that surrounds the center of the product, but leaves

3
           much of the product exposed and viewable;

4
         k.  simple cardboard package that folds like a tent and supports the weight

5
           of the product from a peg;

6
         l.  use of white and green in product packaging;

7
         m. made in the USA logo;

8
         n.  "real bacon" flavor; and

9
         o.  the Benebone name.

10
(hereinafter, the "Maplestick / Bacon Stick Trade Dress").

11
      50.    Benebone's designs are a unique and clear identifier of the brand.  In

12
contrast, its competitors have hundreds or thousands of SKUs without a common

13
design language or common elements.  Nylabone and Petstages are two of the biggest

14
brands in the category.  Nylabone, has products shaped like bones, antlers, rings,

15
dinosaurs, pigs, rawhide, blocks of cheese, baby toys, plush toys and more.  Nylabone

16
also sells products in other categories like toothbrushes and toothpaste, dental wipes

17
and sprays, finger brushes and tartar remover.[6]



27
_____

28
[6]  *Shop Dog Chew Toys, Edibles & Dental Products at Nylabone* (2020).  Available at: https://www.nylabone.com/products (Accessed: April 29, 2020).

---



51.    Similarly, Petstages has no consistent design ethos.  Its product line includes sticks, antlers, bones, rawhide, vegetables, balls, disc flyers, plush toys, baby toys, and more.  Petstages also sells cat toys, cat scratchers, as shown below.[7]

52.    These brands' products span across a wide range of materials, colors, sizes, shapes, and design elements.

53.    By contrast, Benebone designs only a single category of dog toys—and within that category—only four core designs.  The designs are simple, modern, clean, and symmetrical.  These limited unique and cohesive designs have become instantly recognizable as a family and have become inseparable from the Benebone brand.  The Wishbone and Maplestick / Bacon Stick are two of these key designs.

54.    Benebone's use of real bacon flavor in its toys, a part of its trade dress is

_____

[7]    *Petstages Home* (2020). Available at: https://petstages.outwardhound.com/ (Accessed: April 29, 2020).

also a key differentiator in its segment of the market.  At the time Benebone introduced its real bacon flavoring, no other brand used real bacon as flavoring in a nylon dog chew toy.  Benebone's use of real bacon flavor was and remains a material part of Benebone's branding.  Benebone prominently promotes its use of "REAL BACON" on its product packaging, its website, marketing materials, and online retailers Amazon and Chewy.  Benebone has also registered and applied for several trademarks that refer to its use of real bacon flavor.[8]

### C.   Praise for Benebone's Design Language

55.    Leading popular publications have praised Benebone's products, including NBC's Today Show, People Magazine, Cosmopolitan, Woman's Day, and Bustle.

56.    Media and customer praise for Benebone's design came shortly after the launch of its Benebone Wishbone, which was the first product to employ Benebone's unique and identifiable design language.  In a December 8, 2014 issue of People Magazine, actress Sophia Bush (of Law and Order: SVU, This Is Us, Chicago Fire, and Chicago P.D.), praised the Benebone Wishbone:



---

[8]   U.S. Reg. No. 5,613,742; U.S. App. 88/798,687.

57. Bustle listed Benebone first on its list of "The 14 Best Chew Toys For Dogs."[9]  Bustle specifically praised the Benebone toy for its "unique" design and because "it actually smells and tastes like bacon."  Cosmopolitan included Benebone on its list of "26 Gifts Every Dog Mom Should Buy ASAP," and writer Carina Hsieh said "[m]y dog legit goes bananas for" the Benebone toy.[10]  Woman's Day also praised Benebone's design in its article on "15 Indestructible Dog Toys to Challenge Tough Chewers."[11]

58. NBC's Today Show has also heaped praise on Benebone's design, saying:

If dogs could type, this made-in-America chew toy would have twice as many Amazon reviews (currently 6,500 with a 4.3-star rating).  The key to its popularity among dogs is the winning combination of good design, it 'rocks to easily position a comfortable chewing session,' and quality ingredients.  It's flavored with food-grade bacon, chicken and peanut butter. Dog owners appreciate its durability.  One reviewer says his two dogs chew on theirs 8 to 10 hours a day, yet the bones have lasted four months![12]

59. Benebone's Maplestick / Bacon Stick have also received significant praise for their design.  For example, Bustle lauded Benebone's Maplestick for its "curves"

[9]  *14 Durable Dog Toys That Stand Up To Even The Toughest Chewers* (2019). Available at: https://www.bustle.com/p/the-14-best-chew-toys-for-dogs-19271982 (Accessed: April 29, 2020).

[10]  *Gifts Every Dog Owner Needs to Buy ASAP* (2019). Available at: https://www.cosmopolitan.com/lifestyle/g25381745/dog-gifts/ (Accessed: April 29, 2020).

[11]  *15 Indestructible Dog Toys for Your Tough Chewer* (2019). Available at: https://www.womansday.com/life/pet-care/g26763903/most-indestructible-dog-toys/ (Accessed: April 29, 2020).

[12]  *Celebrate National Dog Day with 14 dog-approved favorites* (2018). Available at: https://www.today.com/pets/celebrate-national-dog-day-14-dog-approved-favorites-t135954 (Accessed: April 29, 2020).

on its list of "37 Genius Pet Products That Must Have Been Invented By A Dog Whisperer."[13]   INVERSE included Benebone's Maplestick in its article, "4 Best Indestructible Dog Toys for Aggressive Chewers," calling it "clever" and praising its "shape."[14]

### D. Benebone Is Widely-Admired By Customers Who Associate Benebone with its Unique Trade Dress

60.    Benebone is praised by customers because of its unique product design and the elements of the Wishbone Trade Dress and Maplestick / Bacon Stick Trade Dress.   For those reasons, Benebone's products are well-received by customers. According to Romper, Benebone is "praised so highly by buyers."[15]   Benebone's products are highly sought after in both traditional retail and online markets.   For example, an article run in industry publication Pet Product News in 2019 noted that Benebone products were a top seller at an independent pet store.[16]   Benebone's Maplestick / Bacon Stick have a 4.5/5 average review with more than 1,900 customer reviews on Amazon.com.[17]   The Benebone Wishbone has a 4.4/5 average review with more than 11,000 customer reviews on Amazon.com.[18]   The Benebone Wishbone is

---

[13]  *37 Genius Pet Products That Must Have Been Invented By A Dog Whisperer* (2020). Available at: https://www.bustle.com/p/37-genius-pet-products-that-must-have-been-invented-by-a-dog-whisperer-21771555 (Accessed: April 29, 2020).

[14]  *The Best Dog Toys For Heavy Chewers* (2019). Available at: https://www.inverse.com/article/59276-best-dog-toys-aggressive-chewers (Accessed: April 29, 2020).

[15]  *Your Chew-Happy Doggo Will Love These 15 Toys Even More Than Your Shoes* (2019). Available at: https://www.romper.com/p/15-toys-for-dogs-who-chew-everything-because-youre-about-to-run-out-of-shoes-18668902 (Accessed: April 29, 2020).

[16]  *Dogs Rule at This North Carolina Pet Store* (2019). Available at: http://www.petproductnews.com/Blog/Dogs-Rule-at-This-North-Carolina-Pet-Store/ (Accessed: April 29, 2020).

[17]  https://www.amazon.com/Benebone-Maplestick-Durable-Stick-Large/dp/B07F6WYYJ5/ref=sr_1_1?dchild=1&keywords=benebone%2Bmaplestick&qid=1587494923&s=pet-supplies&sr=1-1&th=1 (Accessed: April 29, 2020).

[18]  https://www.amazon.com/Benebone-Wishbone-Durable-Aggressive-Chewers/dp/B00CPDWT2M?th=1 (Accessed: June 8, 2020).

---

1  currently the number two best-selling dog chew on Amazon and became the number

2  one best seller in early 2017.

3      61.    Benebone has invested significantly to drive customer engagement with

4  its brand and to reinforce customers' association of the Benebone brand with its unique

5  trade dress.

6      62.    Marketing in this product category is driven primarily though social

7  media.  Images of products "in use" (*i.e.*, dogs playing with the products) are the

8  primary method by which Benebone markets its products.  These "lifestyle" images

9  include marketing materials generated by Benebone as well as content generated by

10  influencers and customers that is shared on social media.  Through these branding

11  activations, Benebone is seeking to increase consumer's association of its product

12  design with its brand.

13      63.    In connection with these marketing efforts, Benebone has more than

14  100,000 followers on its Instagram accounts.   (For comparison, market-leader

15  Nylabone has only 85,000 Instagram followers.)  Benebone also advertises on Google

16  search, YouTube, and Amazon.  For example, Benebone is the top several search

17  results on Google, when searching for "bacon flavored Wishbone chew toy."

18      64.    Benebone partners with several of the most prominent social media

19  influencers in the industry.  Over the years, Benebone's social media influencer

20  partners have placed paid posts promoting Benebone's partners to their more than 2.5

21  million combined followers.

22      65.    These efforts have driven significant consumer engagement, which in turn

23  has created an association in consumers' minds between Benebone and its product

24  design.  For example, there are more than 75,000 posts on Instagram with "#benebone,"

25  whereas "#petqwerks" appears in less than 20,000 posts.

26      66.    Because "lifestyle" or "in use" images make up the bulk of Benebone's

27  significant marketing efforts (and because its product design is singular and focused),

28

the design of Benebone's products are not only associated with the brand, customers view this product design *as* the Benebone brand identity.

67.    To date, Benebone has sold over 10 million units of its products and the Wishbone makes up more than half of those sales.  Upon information and belief, Benebone is currently one of the top-ten selling dog chew product manufacturers in the U.S.

### E.    Benebone Invests Significantly to Protect Its Reputation and IP

68.    Benebone has taken care to protect its reputation and intellectual property at great expense and effort.  Benebone holds several trademarks relating to both the BENEBONE brand and several other brands and marks.  Because Benebone devotes significant resources to product design, it has sought to protect those designs with design patents.  Benebone's efforts to patent its unique designs have even been reported by the media.[19]

69.    The USPTO issued the '897 Patent to Benebone.  The '897 Patent depicts a dog toy as shown below:



70.    Benebone's Wishbone, which was first introduced to the market in June 2013, embodies the '897 Patent.

---

[19]    *CT patents hit record levels - for inventors and corporate profiteers* (2020). Available at: https://www.ctinsider.com/business/nhregister/article/CT-patents-hit-record-levels-both-for-14978129.php (Accessed: April 29, 2020).

71.   The USPTO issued the '400 Patent and the '686 Patent (collectively, the "Asserted Stick Patents") to Benebone.  The Asserted Stick Patents depict a dog toy as shown below:



72.   Benebone's Maplestick / Bacon Stick, which was first introduced to the market in July 2018, embody the Asserted Stick Patents.

F.   **Defendants Deceive Consumers, Misappropriate Benebone's IP**

73.   Pet Qwerks began operating as a distributor of gift and stationary products, including oversized postcards.[20]  Pet Qwerks began selling a ball toy for dogs and in early 2016, began to expand its dog toy line.

74.   Much like the rest of Benebone's competitors (including Nylabone and Petstages discussed above), Pet Qwerks has no common design ethos.  Its designs include balls, antlers, ropes, tires, rings, rawhide, sticks, ropes, bubbles, plush toys and hockey pucks.  Examples of Pet Qwerks' products, packaging, and design are below[21]:

---

[20]   *Pet Qwerks Story* (2020). Available at: https://shop.petqwerks.com/blogs/news/123321415-pet-qwerks-story (Accessed: April 29, 2020).

[21]   *Products* (2020). Available at: https://shop.petqwerks.com/collections/all/ (Accessed: April 29, 2020).

1
2
3
4
5
6
7
8
9



10
11
12
13

75.   As of early 2017, Pet Qwerks was not a major competitor in the same market segments as Benebone and was primarily selling dog balls, rubber tire products, and a line of chew toys called "Flavorit" with the purpose of smearing peanut butter or other food in its holes.

14
15
16
17

76.   According to Pet Qwerks' product catalogs, the vast majority of Pet Qwerks' products at the time were not manufactured in the U.S. and it did not use natural bacon flavoring.  None of their products had modern or curved design elements which are signature to the Benebone brand.

18
19
20
21
22
23
24
25
26

77.   In March 2017, Benebone's CEO received a call from a customer telling him that he should talk to Pet Qwerks.  This customer suggested to Benebone that Pet Qwerks may be for sale.  Benebone's CEO spoke to Pet Qwerks' VP of Sales.  Pet Qwerks' VP of Sales suggested "maybe we can work together."  Benebone did not make any offer to associate with Pet Qwerks or to purchase Pet Qwerks or any of its business lines.  Pet Qwerks' VP of Sales then encouraged a call between Benebone's CEO and Pet Qwerks' founder and provided the founder's contact information. Benebone chose not to follow up with Pet Qwerks' founder.

27
28

78.   Also around this time, Benebone was told by an outside sales representative that a competitor was being encouraged to copy Benebone's products.

Thus, upon information and belief, Pet Qwerks intended (and intends) to copy Benebone's product line and unique design language.

79.     The timeline below documents the key dates relating to Pet Qwerks' infringement campaign:



80.     Petmate sells pet products under a variety of brands, has been owned by a number of private equity firms, and is currently owned by a billion-dollar hedge fund.  Petmate's brands include Arm & Hammer, Chuckit!, Fat Cat, La-Z-Boy, Ruffmaxx, and Vittles Vault.

81.     In or around August 2020, Petmate acquired Pet Qwerks.  According to Petmate's public statements, Pet Qwerks is now an integrated part of Petmate (*i.e.*, no longer operating as a separate company).  Upon information and belief, all former Pet Qwerks employees and management are no longer involved with the Pet Qwerks brand and Pet Qwerks does not act as a separate entity.  Instead, as per Petmate's public statements, the Pet Qwerks brand is now an integrated part of Petmate's portfolio of brands and Petmate now operates and controls the Pet Qwerks brand.

82.     Thus all acts alleged herein that have occurred after the acquisition have been done by Petmate.  For example, Petmate now sells all Pet Qwerks-branded

products, including the Infringing Products, through Petmate's Amazon store.[22]  And, a new version of the BarkBone Stick (discussed below) has been launched by Petmate.  In addition to liability arising from its own acts subsequent to the acquisition (including continued infringement), Petmate is also liable for past acts of infringement by Pet Qwerks by virtue of Petmate's acquisition of Pet Qwerks' assets, including the liability of the Infringing Products.

### The Infringing Curved BarkBone

83.    Benebone did not know it at the time, but also in March 2017 – right after the conversation between Benebone and Pet Qwerks took place – Pet Qwerks introduced a new product called the "Flavorit BarkBone."  This was the first time that Pet Qwerks used the "BarkBone" sub-brand and Pet Qwerks modified its Flavorit product line in several ways to look confusingly similar to the Benebone Wishbone.

84.    The Benebone Wishbone's curved design was simple but revolutionary when it was introduced.  When the Benebone Wishbone was introduced, Pet Qwerks had a line of chew toys called "Flavorit" with the purpose of smearing peanut butter or other food in its holes.  These chew toys were flat in design and were not found in many pet stores:[23]



85.    After Benebone's introduction and success of the Wishbone, Pet Qwerks

---

[22]  *Amazon.com*. Available at: https://www.amazon.com/stores/page/C1521D70-1D7A-4968-BD52-E952DCD9AA5C?productGridPageIndex=2 (Accessed: October 21, 2020).

[23]  *Flavorit Bones Dog Chew Toys* (2020). Available at: https://shop.petqwerks.com/collections/flavorit-bones-dog-chew-toys (Accessed: April 29, 2020).

introduced a new version of its Flavorit chews, rebranded as the "Flavorit BarkBone," and a "Bacon BarkBone" to form the Curved BarkBone line.  The Curved BarkBone toys have confusingly similar "real bacon" flavoring, a similar brown coloring, similarly shaped nobs on its end, and are curved similarly to the Wishbone, with the intent to confuse and deceive consumers, as demonstrated by the photos below (Curved BarkBones on left; Benebone Wishbones on right[24]):




86.     The new design of the Curved BarkBone is confusingly similar to Benebone's Wishbone.  The Pet Qwerks product is at left, while the Benebone curved Wishbone is at right:



87.     Photographs of the products posted by consumers on Instagram demonstrate that the products are confusingly similar when "in use" (Benebone

---

[24]   https://www.girlplusbulldogs.com/blog/petqwerks-flavorit-barkbone.

Wishbone on left,[25] Pet Qwerks Curved BarkBone on right[26]):







88.     At the time of the introduction of its Curved BarkBone design, none of Pet Qwerks' products had curved design elements which were signature to the Benebone brand and Wishbone Trade Dress.  In addition, according to Pet Qwerks' product catalogs at the time, the vast majority of its products were not manufactured in the U.S. and it did not use natural bacon flavoring.

89.     The confusingly similar curved design and "REAL BACON" flavoring are prominently featured in Pet Qwerks' marketing materials:[27]

---

[25]   https://www.instagram.com/p/B6yJF_7pOs2/; @lapamplemoose.

[26]   https://www.instagram.com/p/B5QSBzcH3Hw/;
https://www.facebook.com/petqwerks/photos/pcb.3066579360087007/306657929
3420347/?type=3&theater.

[27]   *Interactive Dog Toys, Dog Toys, Dog Chews, Cat Toys, Pet Toys* (2020).
Available at: https://petqwerks.com/ (Accessed: April 30, 2020).



90.     Because of Pet Qwerks' imitation of Benebone's Wishbone Trade Dress, there is clear evidence of actual consumer confusion in the marketplace.  In the January 28, 2020 Instagram post below, the poster (@goldenboymemphis) posted a picture of a dog chewing on a Curved BarkBone, but tagged the post with "#benebone" (there is no "#petqwerks" on this post):

91.     The below Instagram story shows a picture of a dog with four chew toys: 3 Benebone Wishbones and 1 Curved BarkBone.  However, the account owner addressed the post to Benebone's official account by adding "@MYBENEBONE" to the story and also added the text, "Someone has gathered all the benebones in the house and claimed them all as his," clearly not appreciating that the Curved Wishbone is not in fact a Benebone product:[28]

---

[28] https://www.instagram.com/thepursuitsofperseus/.

1
2
3
4
5
6
7
8
9
10
11
12



13    92.    In the Instagram post below, Instagram influencer @kiwi_the_poodle
14    made a paid advertising post for Pet Qwerks.  Even though the product used in the post
15    is a *green* Curved BarkBone and despite kiwi_the_poodle writing "Thanks to
16    @petqwerks" in the post accompanying the picture, consumers still confused the
17    Curved BarkBone with Benebone's well-known Wishbone design[29]:

18
19
20    
21
22
23
24
25
26
27

28    [29]   https://www.instagram.com/p/B9B_BuHpOdI/.

1

## The Infringing BarkBone Stick

2        93.     In July 2018, Benebone introduced its Maplestick / Bacon Stick.  Just

3    months later – in or around March 2019 – Pet Qwerks announced a new product it

4    dubbed the BarkBone Stick, which was released in the summer of 2019.  Tooling,

5    packaging, design and logistics in launching a new product can easily take six or nine

6    months.    Thus, Pet Qwerks began working on its copycat product the moment

7    Benebone's Maplestick / Bacon Stick was released.

8        94.     As shown below, the BarkBone Stick (right) bears a striking resemblance

9    to the Benebone Maplestick / Bacon Stick (left), which embodies Benebone's patented

10   design.  The Pet Qwerks design contains each of the unique elements of the Maplestick

11   / Bacon Stick design noted above:  a straight center, equal branches at both ends, and

12   branches that end in cylindrical cutoffs with no taper.

13
14   
15

16       95.     As Pet Qwerks began to roll out its product packaging and marketing

17   materials, it became apparent that its goal was not simple to copy Benebone's patented

18   design, but also to mimic Benebone's product packaging and other marketing

19   materials.

20       96.     For example, the product sizing chart used by Defendants on their website

21   is deceptively similar to the chart used by Benebone and demonstrates that the products

22   offer nearly identical designs:[30]

23
24   _____

25   [30]   On left: *BarkBone Stick with Peanut Butter Flavor Dog Chew Toy for Aggressive
         Chewers, Made in USA - Pet Qwerks Toys* (2020). Available at:

26       https://petqwerks.com/product/barkbone-stick-peanut-butter-flavor-dog-chew-toy-
         made-in-usa/ (Accessed: April 30, 2020).

27       On right: (2020) Amazon.com. Available at: https://www.amazon.com/Benebone-
         Maplestick-Durable-Stick-Medium/dp/B07F6VB2KW (Accessed: April 30,
28       2020).

1

2

3

4

5

6





7    97.    Pet Qwerks' marketing materials used on its social media pages also

8    demonstrate that the overall look of the infringing BarkBone Stick is confusingly

9    similar to Benebone's Maplestick / Bacon Stick:[31]

10

11

12

13

14

15

16

17

18

19

20

21









22    98.    Upon information and belief, Pet Qwerks has posted these marketing

23    photos on its social media accounts with the intent to deceive customers and potential

24    customers into believing that its infringing BarkBone Stick is the same as or associated

25    with Benebone's Maplestick / Bacon Stick, based on the products appearing nearly

26    identical in these images.

27    _____

28    [31]  *Pet Qwerks Toys* (2020).  Available at: https://www.facebook.com/petqwerks/
         (Accessed on April 30, 2020).

99.   Pet Qwerks uses images on its website that show the infringing BarkBone Stick in a vertical orientation that also emphasizes the apparent similarities with Benebone's Maplestick / Bacon Stick, and, upon information and belief, are intended to deceive consumers into believing that the products are associated and/or one in the same.

100.   Pet Qwerks uses other advertising that not only emphasizes the similarity of its products to Benebone's, but also presents them similarly, deceiving customers. Pet Qwerks products are often presented without packaging on the internet, both on internet retail sites such as www.amazon.com and in social media and lifestyle photos. For example, Pet Qwerks' advertising displays its BarkBone Stick in a pile (right) that looks similar to Benebone's Maplestick / Bacon Stick when photographed in a pile (left):[32]



[32] *BarkBone Stick Peanut Butter Flavor Infused Dog Chew, Made in USA* (2019). Available at: https://www.facebook.com/138290592915913/videos/1586436031492395/ (Accessed: April 29, 2020).

101. The look and feel of the Pet Qwerks BarkBone Stick packaging is also confusingly similar to the packaging for Benebone's Maplestick / Bacon Stick that is a part of Benebone's Stick Trade Dress. Both packages utilize minimal carboard that surrounds the center of the brown dog toy, which prominently displays the similarities in the products. Pet Qwerks' packaging makes significant use of green and white – the same color pallet used by Benebone.

102. The packaging for both Benebone and Pet Qwerks also prominently displays the American flag and Made in USA label, which is a significant driver of sales.[33] Pet Qwerks also now sells its BarkBone in a "REAL BACON" flavor. As shown below, Pet Qwerks uses the confusingly similar term and "REAL BACON" branding on its product packaging (Pet Qwerks, left; Benebone, right):[34]

 

103. The Pet Qwerks BarkBone Stick is sold at many of the same and similar retailers as the Benebone's Maplestick / Bacon Stick—both in physical stores and online. Pet Qwerks' infringing BarkBone Stick typically sells for between $9 and $15 at retail as compared to $10 to $20 for Benebone's Maplestick / Bacon Stick.

104. Images on Amazon also show how the products are nearly identical from a consumer's perspective. Any minor variations in the products are virtually eliminated when shown in use as dogs' paws, jaws, or both inevitably partially obscure the respective products. For example, Pet Qwerks' infringing BarkBone Stick is shown on

---

[33] *Solid Sourcing Required* (2018). Available at: http://www.petproductnews.com/December-2018/Solid-Sourcing-Required/ (Accessed: April 29, 2020).

[34] Left: *Interactive Dog Toys, Dog Toys, Dog Chews, Cat Toys, Pet Toys* (2020). Available at: https://petqwerks.com/ (Accessed: April 30, 2020).

Right: *Benebone* | Our Products (2020). Available at: https://www.benebone.com/products (Accessed: April 30, 2020).

the left and Benebone's Maplestick / Bacon Stick is shown on the right:







105.   The screenshot below, taken from a video posted by a consumer on Amazon, shows that in person, the products are nearly indistinguishable:



1      106.   Unsurprisingly, there is already evidence of actual consumer confusion in

2  the marketplace.   The Instagram post below, made by user @doodling_with_otter,

3  shows a picture of a dog standing next to an infringing BarkBone stick.   The text on

4  the post reads, "Posing..with my long legs and Benebone."   The post also carries the

5  hashtag "#benebone."[35]



16      107.   A comment by user @madisontheminidoodle shows that viewers of this

17  post also confuse the infringing BarkBone Stick for the Benebone Maplestick / Bacon

18  Stick, as he or she writes, "Love those @mybenebone."



28  [35] https://www.instagram.com/p/B3LAcfOB2gM/

108.   These instances of actual confusion are not isolated.  A February 25, 2020 Instagram post by user @max_golden_puppy shows a dog holding an infringing BarkBone stick in his mouth.  The user tags the photo with the hashtag "#benebone" and also directs the post to Benebone's official account by adding "@mybenebone" to the post, evidencing the clear, but mistaken, belief that the dog is holding a Benebone Maplestick / Bacon Stick.[36]



109.   Since its acquisition of Pet Qwerks, Petmate has launched a new version of the BarkBone Stick (together with the original version, the "BarkBone Stick") which Petmate now markets and sells.  This new version continues to infringe on Benebone's design patents and Stick Trade Dress for the reasons outlined above.  Based on promotional images shared by Petmate (shown below), it appears that this new version has four nubs on each end rather than the three nubs present on the original version of

---

[36] https://www.instagram.com/p/B9Apb0aJhnp/.

1

the BarkBone Stick.

2

3

 

4

5

6

7

8

9

110.   The new BarkBone Stick appears to be virtually indistinguishable from

10

the original BarkBone Stick and thus confusingly similar to the Benebone Maplestick

11

/ Bacon Stick for the same reasons outlined above.  In addition, as discussed above

12

with respect to the original BarkBone Stick, the in use images shared by Petmate

13

obscure even the insignificant differences in the products.

14

### The Infringing Wish BarkBone

15

111.   On or about May 7, 2020, Pet Qwerks announced the launch of a new

16

product: a bacon-flavored dog chew, called the "Wish BarkBone."  The similarities of

17

this product to the Benebone Wishbone are undeniable.

18

112.   The Wish BarkBone carries the same and confusingly similar elements to

19

each aspect of the Wishbone Trade Dress.  As shown below, the product design is

20

strikingly and confusingly similar.  For example, when resting on a flat surface, both

21

products sit on their three outer-points with a raised center and provide the same side

22

profile.  Additionally, the Wish BarkBone carries the bacon flavor, made in USA logo,

23

brown color, "BarkBone" sub-brand, prominent use of white and green, and cardboard

24

packaging that surrounds the center of the product that folds like a tent and supports

25

the weight of the product from a peg.  The Wish BarkBone copies every element of the

26

Wishbone Trade Dress.

27

113.   Defendants' BarkBone only recently launched, but is already on sale at

28

Amazon and will likely be sold in similar brick and mortar retailers to the Benebone

-35-
THIRD AMENDED COMPLAINT

Wishbone.  Defendants' infringing Wish BarkBone typically sells for between $9 and $15 at retail as compared to $10 to $20 for Benebone's Wishbone.

114.  As discussed above, most marketing of these products is done "in use," and as the images below demonstrate, these products are confusingly similar to consumers[37]:

| Benebone Wishbone | Wish BarkBone |
|---|---|
|  |  |
|  |  |

---

[37]  Benebone Wishbone on left: @emwng on Instagram; @jade.n.bowie on Instagram;https://www.facebook.com/petqwerks/photos/pcb.3066579360087007/3066579293420347/?type=3&theater.

Pet Qwerks' Wish BarkBone on right: https://www.amazon.com/Pet-Qwerks-BarkBone-Bacon-Flavor/dp/B088414T1Y?ref_=ast_sto_dp; https://www.facebook.com/petqwerks/photos/a.165827993495506/3032230226855254/?type=3&theater; https://www.facebook.com/petqwerks/photos/pcb.3065438973534379/3065438860201057/?type=3&theater; https://www.instagram.com/p/CAEKuxoJ7LG/.



115.   Because many products in the dog chew category – particularly Defendants' products – are purchased online, the likelihood of consumer confusion is heightened.  Even if minor variations in the product design and packaging could be perceptible when comparing the products in person, consumers are rarely able to undertake such a comparison whether shopping online or at a brick and mortar retailer. For example, even when hung on a peg in a retail store the products are viewed head on and look confusingly similar.

116.   There are multiple clear instances of actual consumer confusion in the marketplace, despite the Wish BarkBone only being on the market for a few months. For example, on May 26, 2020, the Instagram influencer "bark.with.it" posted a video of dogs playing with the Wish BarkBone, as part of a paid promotion by Pet Qwerks. A consumer comments on this post: "Ooh The best benebone!" clearly referring to the

Benebone Wishbone[38]:



117.   Similarly, the June 3, 2020 social media post below shows a consumer commenting "Aw I love me some benebones <3" on an influencer's post that carries a picture of the Wish BarkBone[39]:



---

[38] https://www.instagram.com/p/CApuj64p4O_/

[39] https://www.instagram.com/p/CA-olCGBn8m/

118.   Actual consumer confusion is not surprising.  Defendants' wholesale copying of Benebone's trade dress was intended to cause confusion.  Defendants have telegraphed this intent in many ways, but possibly none more so than their use of the "*BarkBone*" sub-brand applied to the knock off *Benebone* products.  This is also not simply a case of discrete copying.  Here Defendants' trade dress infringement and the likelihood of consumer confusion is particularly acute because Defendants have taken to launching a sub-brand that infringes Benebone's *family* of products and trade dress.

119.   While creating designs that copy significantly from the design and marketing of Benebone's successful products, Defendants' products do not appear to copy Benebone's product quality according to at least one review.  YouTube channel "Tough Toy Tryouts," which has posted videos of dogs reviewing dog toys for several years, reviewed the BarkBone Stick and called it "the worst toy we've ever tested."  Accordingly, Defendants' deceptive conduct will have (and has had) a deleterious effect on Benebone's goodwill."[40]

120.   Defendants are well aware of Benebone's patents and have continued their unauthorized infringing activity despite this knowledge.  Benebone gave written notice to Pet Qwerks of their infringement of Benebone's '400 Patent on or about February 12, 2020.  Benebone attempted, albeit unsuccessfully, to actively engage in good faith negotiations regarding Pet Qwerks' infringement.  On information and belief, Pet Qwerks has pre-suit knowledge of the Asserted Stick Patents and the '897 Patent and acted egregiously in that it has done nothing to avoid infringement.

### The Asserted Trade Dress Is Non-Functional

121.   The configuration of the Asserted Trade Dress reflects Benebone's particular aesthetic choices that are not essential to the use or performance of the Wishbone and Maplestick / Bacon Stick.  Further, as discussed herein, there are a wide

---

[40]   *Worst toy ever? | DOG TOY REVIEWS | Pet Qwerks Barkbone WOOD Mint Flavor Dog Toy* (2020).  Available at: https://www.youtube.com/watch?v=xb_E9WwmxsI (Accessed: April 30, 2020).

variety of available configurations for dog chew toys and protecting the particular, and unique, configuration embodied in the Asserted Trade Dress does not put competitors at a significant non-reputation-related disadvantage

122.   The brown color and non-uniform marbling and/or speckling in the surface coloring of the Asserted Trade Dress (paragraphs 43(a)-(b) and 46(a)-(b)) are non-functional because this choice of coloring is purely aesthetic and does not have any impact on the products' function as dog chew toys.  Brown color and non-uniform marbling and/or speckling are not essential to the use or purpose of the chew toys and does not put competitors at a non-reputation related disadvantage.  Moreover, other chew toys with different coloring and without marbling and/or speckling work equally well as dog chew toys.

123.   The particular cardboard packaging and use of white and green coloring in product packaging are non-functional (paragraphs 43(i)-(k) and 46(j)-(l)).  There are wide and varied colors and packaging designs that are available for the sale of dog chew toys.  Benebone's choice of white and green and a cardboard package that surrounds only the center of the product while leaving the ends exposed is an aesthetic choice that does not put competitors at a non-reputation related disadvantage and does not impact consumers' use of the products.  The Wishbone and Maplestick / Bacon Stick would provide the same benefit, cost the same amount, and be of the same quality regardless of whether they were packaged as they currently are on in some different configuration with different coloring.

124.   The purpose of the Benebone name (paragraphs 43(n) and 46(o)) is to mark its products and create an association in the minds of consumers between the Benebone brand and these products; it does not provide any benefit to consumers in the use of the products and protection of this element does not put competitors at a significant non-reputation-related disadvantage.

125.   The use of "real bacon" flavor and "real bacon" terminology to convey the flavor of the chew toys is nonfunctional as they are not essential to use of the

product, particularly given that the chew toys are chewed on by dogs and not the human consumers who purchase them.  Similarly, while the use of all U.S.-sourced materials and U.S. manufacturing may impact consumer's purchasing decisions, the particular use and placement of the made in USA logo in connection with the Wishbone and Maplestick / Bacon Stick is an aesthetic choice made by Benebone that does not impact consumers' use of the products.

126.   The textured look with round edges (paragraph 43(g)) and textured look (paragraph 46(i)) are aesthetic choices.  These trade dress elements are expressly defined by their "look" rather than their function.  Similarly, the unique curved shaped described in paragraphs 43(c)-(d) is purely aesthetic, and nonfunctional, because it creates a distinctive look to the Wishbone when shown from a side perspective, but this distinctive look does not impact the Wishbone's function as a dog chew toy.  The unique curved shaped described in paragraph 46(c) is purely aesthetic, and nonfunctional, because it creates a distinctive look to the Maplestick / Bacon Stick when shown from a side perspective, but this distinctive look does not impact the Maplestick / Bacon Stick's function as a dog chew toy.

127.   The other design elements listed are nonfunctional and aesthetic, including paragraphs 43(c)-(f) and 46(c)-(h).  As discussed above, these are expressive elements of design that are unlike the natural elements (a stick and a wishbone) that they allude to.  These design elements are source identifying, in that they are unique and particularly associated with the Benebone brand in the minds of consumers, but they are not essential to the use or purpose of the toys as dog chews as evidence by the numerous other designs by third parties referenced herein.  Thus, these trade dress elements reflect Benebone's conscious design choices that do not put competitors at a non-reputation related disadvantage and do not impact consumers' use of the products.

128.   Moreover, the U.S. Patent and Trademark Office (the "PTO") has already determined that these patented designs are not purely functional.  The Wishbone and Maplestick / Bacon Stick embody U.S. Design Patents.  Thus, the design elements that

are part of the Asserted Trade Dress are nonfunctional according to the PTO's determination.

## FIRST CLAIM FOR RELIEF

## Infringement of the '400 Patent

129.   Benebone alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

130.   At all times herein mentioned the '400 Patent was and is valid and fully enforceable.

131.   As shown below, a side by side comparison of Benebone's '400 Patent and Defendants' BarkBone Stick quickly reveals that the BarkBone Stick appears substantially the same as Benebone's '400 Patent to an ordinary observer, the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other:

U.S. Design Patent No. D870,400          Defendant's Pet Chew Toy







132.   Defendants have infringed and, despite Benebone's written request to stop, are still infringing Claim 1 of the '400 Patent by marketing, offering to sell, and/or selling its BarkBone.

133.   Defendants use, offer for sale, offer to fulfill, sale, fulfillment, and/or shipment of the dog chew toy within the United States and its territories infringes the '400 Patent in violation of 35 U.S.C. §271(a).

134.   Defendants have had actual notice of the infringement of the '400 Patent since at least as early as February 12, 2020.

135.   Despite having notice of its infringement of the '400 Patent, Defendants have infringed, and will continue to infringe unless enjoined, the '400 Patent.

136.   As a result of Defendants' infringement of the '400 Patent, Benebone has been irreparably harmed, including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later, (2) negative effect on its reputation as innovator and pioneer, (3) the unquantifiable effect on lost sales of related products, (4) price erosion due to Defendants' BarkBone being sold at a price point lower than Benebone's patented product, (5) diversion of resources to defend against loss of market share caused by sales of the BarkBone, and (6) Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

137.   Defendants' acts of infringement have been, and continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S.C. § 285 and the enhancement of damages pursuant to 35 U.S.C. § 284.

## SECOND CLAIM FOR RELIEF

### Infringement of the '686 Patent

138.   Benebone alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

139.   At all times herein mentioned the '686 Patent was and is valid and fully enforceable.

140.   As shown below, a side by side comparison of Benebone's '686 Patent and Defendants' BarkBone Stick quickly reveals that the BarkBone Stick appears

THIRD AMENDED COMPLAINT

substantially the same as Benebone's '686 Patent to an ordinary observer, the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other:

U.S. Design Patent No. D871,686      Defendant's Pet Chew Toy







141.  Defendants have infringed and are still infringing Claim 1 of the '686 Patent by marketing, offering to sell, and/or selling its BarkBone.

142.  Defendants' use, offer for sale, offer to fulfill, sale, fulfillment, and/or shipment of the dog chew toy within the United States and its territories infringes the '686 Patent in violation of 35 U.S.C. §271(a).

143.  As a result of Defendants' infringement of the '686 Patent, Benebone has been irreparably harmed, including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later, (2) negative effect on its reputation as innovator and pioneer, (3) the unquantifiable effect on lost sales of related products, (4) price erosion due to Defendants' BarkBone being sold at a price point lower than Benebone's patented product, (5) diversion of resources to defend against loss of market share caused by sales of the BarkBone, and (6) Defendants' unauthorized sales that are

enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

### THIRD CLAIM FOR RELIEF

### Infringement of the '897 Patent

144.   Benebone alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

145.   At all times herein mentioned the '897 Patent was and is valid and fully enforceable.

146.   As shown below, a side by side comparison of Benebone's '897 Patent and Defendants' Wish BarkBone quickly reveals that the Wish BarkBone appears substantially the same as Benebone's '897 Patent to an ordinary observer, the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other:

U.S. Design Patent No. D690,897     Defendant's Pet Chew Toy

 

147.   Defendants have infringed and are still infringing Claim 1 of the '897 Patent by marketing, offering to sell, and/or selling its Wish BarkBone.

148.   Defendants' use, offer for sale, offer to fulfill, sale, fulfillment, and/or shipment of the dog chew toy within the United States and its territories infringes the '897 Patent in violation of 35 U.S.C. §271(a).

149.   Defendants have had actual notice of potential infringement of the '897 Patent since at least as early as April 8, 2020, when Benebone's counsel notified Pet Qwerks' counsel of the existence of the '897 Patent and that the introduction of any similar product would constitute infringement.

150.   Despite having notice of its infringement of the '897 Patent, Defendants have infringed, and will continue to infringe unless enjoined, the '897 Patent.

151.   As a result of Defendants' infringement of the '897 Patent, Benebone has been irreparably harmed, including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later, (2) negative effect on its reputation as innovator and pioneer, (3) the unquantifiable effect on lost sales of related products, (4) price erosion due to Defendants' Wish BarkBone being sold at a price point lower than Benebone's patented product, (5) diversion of resources to defend against loss of market share caused by sales of the Wish BarkBone, and (6) Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

## FOURTH CLAIM FOR RELIEF

### Federal Trade Dress Infringement and False Designation of Origin

### (15 U.S.C. § 1125(a))

152.   Benebone alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

153.   Benebone is the owner of all right and title to the distinctive Stick Trade Dress embodied in Benebone products, and in particular in Benebone's Maplestick / Bacon Stick.  Benebone is the owner of all right and title to the distinctive Wishbone Trade Dress embodied in Benebone products, and in particular in Benebone's Wishbone (the Stick Trade Dress and Wishbone Trade Dress, collectively, the "Asserted Trade Dress").

1    154.  Benebone's Asserted Trade Dress, described above, is comprised of

2    inherently distinctive features which are not functional and are protected under the

3    Lanham Act § 43(a).

4    155.  In addition, the Asserted Trade Dress, as embodied in Benebone's

5    Maplestick / Bacon Stick and Benebone's Wishbone products, has acquired secondary

6    meaning.  Based on extensive and consistent advertising, promotion, and sales

7    throughout the United States, the Asserted Trade Dress enjoys secondary meaning

8    among consumers, identifying Benebone as the source of these products.

9    156.  Defendants have infringed Benebone's Asserted Trade Dress and created

10   a false designation of origin by using in commerce, without Benebone's permission,

11   confusingly similar marks and design elements.  The potential for confusion is

12   amplified by Defendants' choice to use the marks and design elements in connection

13   with products that, in whole or in part, are copies or knock-offs of Benebone's own

14   products.

15   157.  Defendants' unauthorized use of marks and design elements confusingly

16   similar to Benebone's Asserted Trade Dress constitutes a false designation of origin, a

17   false or misleading description of fact, a false or misleading representation of fact, and

18   has caused and is likely to cause confusion, mistake, and/or deception as to the

19   affiliation, connection, or association of Defendants' products with Benebone and the

20   origin, sponsorship, or approval of Defendants' products by Benebone.

21   158.  The aforementioned acts constitute trade dress infringement, false

22   designation of origin, and unfair competition in violation of 15 U.S.C. § 1125(a).

23   159.  Benebone is informed and believes that Defendants knew of the Asserted

24   Trade Dress when they designed its products, and at least as early as February 12, 2020,

25   and despite Benebone's requests continues to sell an infringing product.  Accordingly,

26   Defendants' infringement has been and continues to be intentional, willful and without

27   regard to Benebone's rights in the Asserted Trade Dress.

28

160.   As a direct and proximate result of Defendants' unlawful acts and practices, including those set forth above, Defendants have caused, are causing, and unless immediately enjoined by this Court, will continue to cause immediate and irreparable harm to Benebone, for which there is no adequate remedy at law, and for which Benebone is entitled to injunctive relief.

161.   As a direct and proximate result of the foregoing acts, Benebone has suffered and will continue to suffer significant injuries in an amount to be determined at trial.  Benebone is entitled to recover all damages, including attorneys' fees, that it has sustained on account of Defendants' infringement, and all gains, profits and advantages obtained by Defendants as a result of their unlawful acts.

162.   Defendants' actions described above make this an exceptional case under 15 U.S.C. § 1117(a) and, therefore, Benebone is entitled to an award of its attorneys' fees and costs.

### FIFTH CLAIM FOR RELIEF
### Common Law Trade Dress Infringement

163.   Benebone alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

164.   Defendants' infringement of Benebone's Asserted Trade Dress also constitutes trade dress infringement under common law of the state of California.

165.   The products Defendants produced, distributed, advertised, and offered for sale bear confusingly similar reproductions of Benebone's Asserted Trade Dress in the Maplestick / Bacon Stick and Wishbone, such as to cause a likelihood of confusion as to the source, sponsorship, or approval by Benebone of Defendants' products. Defendants' unauthorized use of the Asserted Trade Dress has caused and is likely to cause confusion as to the source of the products among consumers.

166.   As a direct and proximate result of Defendants' unlawful acts and practices, including those set forth above, Defendants have caused, are causing, and unless immediately enjoined by this Court, will continue to cause immediate and

irreparable harm to Benebone, for which there is no adequate remedy at law, and for which Benebone is entitled to injunctive relief.

167.   As a direct and proximate result of the foregoing acts, Benebone has suffered and will continue to suffer significant injuries in an amount to be determined at trial.  Benebone is entitled to recover all damages, including attorneys' fees, that it has sustained on account of Defendants' infringement, and all gains, profits and advantages obtained by Defendants as a result of its unlawful acts.

168.   Defendants' unlawful acts were willful, deliberate, and intended to cause confusion among the public, taken in reckless disregard of Benebone's rights.  As such, an award of exemplary and punitive damages is necessary in an amount sufficient to deter similar misconduct in the future.

## SIXTH CLAIM FOR RELIEF

### (Unfair Competition in Violation of Cal. Bus. & Prof. Code, § 17200 et. seq.)

169.   Benebone alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

170.   By virtue of the acts complained of herein, Defendants have intentionally caused a likelihood of confusion among consumers and the public and have committed acts that constitute fraudulent, unlawful, and unfair business practices as defined by California Business & Professions Code § 17200, *et seq*.

171.   Upon information and belief, Defendants' deceptive, unfair, and fraudulent business practices were willfully undertaken with full knowledge of Benebone's Asserted Trade Dress, and with the intent to misappropriate Benebone's goodwill and reputation.

172.   As a direct and proximate result of the foregoing acts, Benebone has suffered and will continue to suffer significant injuries in an amount to be determined at trial.  Benebone is entitled to all available relief provided for under the California Unfair Business Practices Act, Cal. Bus. & Prof. Code, § 17200 *et. seq*., including an accounting and disgorgement of all illicit profits that Defendants made on account of

its deceptive, unfair, and fraudulent business practices.   Furthermore, because Benebone has no adequate remedy at law for Defendants' ongoing unlawful conduct, Benebone is entitled to injunctive relief prohibiting Pet Qwerks from unfair competition.

### SEVENTH CLAIM FOR RELIEF

### (Unfair Competition Under California Common Law)

173.   Benebone alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

174.   Defendants' acts complained of herein have been committed and are being committed with the deliberate purpose and intent of appropriating and trading on Benebone's goodwill and reputation, and thereby unfairly competing with Benebone in violation of the common law of the State of California.

175.   Defendants' actions described herein were taken with substantial certainty that such acts would cause harm to Benebone and in conscious disregard for Benebone's rights.  Defendants' conduct described herein was done with malice, ill-will and intent to harm Benebone, such as to constitute oppression, fraud, malice, and despicable conduct under Cal. Civ. Code § 3294, and thereby entitling Benebone to exemplary damages in an amount appropriate to punish and set an example of Defendants.

176.   As a direct and proximate result of the foregoing acts, Benebone has suffered and will continue to suffer significant injuries in an amount to be determined at trial.  Benebone is entitled to recover all damages, including attorneys' fees, that Benebone has sustained on account of Defendants' unfair competition, and all gains, profits and advantages obtained by Defendants as a result of their unlawful acts. Furthermore, because Benebone has no adequate remedy at law for Defendants' ongoing unlawful conduct, Benebone is entitled to injunctive relief prohibiting Defendants from unfair competition.

1

## **PRAYER FOR RELIEF**

2  WHEREFORE, Plaintiff Benebone respectfully requests the following relief

3  from this Court:

4  A.    A judgment in favor of Benebone that Defendants have infringed

5  the '400 Patent, '686 Patent, '897 Patent, and Benebone's Asserted Trade Dress;

6  B.    A judgment declaring Defendants' infringement of the '400 Patent, '897

7  Patent, and Benebone's Asserted Trade Dress willful and deliberate;

8  C.    A permanent injunction issued by this Court enjoining Defendants and

9  their officers, agents, servants, employees and attorneys and any and all persons in

10  active concert or participation with Defendants, from further infringing, whether

11  directly or indirectly, the '400 Patent, '686 Patent, '897 Patent, and the Asserted

12  Trade Dress; from committing any other unfair business practices directed toward

13  obtaining for themselves the business and customers of Benebone; and from

14  committing any other unfair business practices directed toward devaluing or

15  diminishing the brand or business of Benebone; or alternatively, a judicial decree that

16  Defendant pays an ongoing royalty in an amount to be determined for continued

17  infringement after the date of judgment;

18  D.    An order requiring that Defendants recall from any distributors and

19  retailers and to deliver to Benebone for destruction all remaining inventory of all

20  Infringing Products and related items, including all advertisements, promotional and

21  marketing materials therefore, as well as means of making the same;

22  E.    An order requiring Defendants to file with this Court and serve on

23  Benebone within thirty (30) days after entry of the injunction, a report in writing and

24  under oath setting forth the manner in which Defendants complied with the

25  injunction.

26  F.    That Benebone be awarded damages adequate to compensate Benebone

27  for Defendants' wrongful conduct described herein, including its infringement of

28  the '400 Patent, '686 Patent, '897 Patent, and its infringement of the Asserted Trade

1   Dress, including Benebone's profits lost as a result of infringement of the '400

2   Patent, '686 Patent, '897 Patent, and Asserted Trade Dress, and that the damages be

3   enhanced due to the willfulness of the infringement of the '400 Patent and '897

4   Patent, in accordance with 35 U.S.C. § 284 and/or § 289, and15 U.S.C. § 1117;

5     G. That Benebone be awarded its costs and attorney's fees, pursuant to 35

6   U.S.C. § 285 and U.S.C. § 1117;

7     H. A judgment declaring this case to be "exceptional" under 35 U.S.C. §

8   285;

9     I. A judgment trebling any damages award pursuant to 15 U.S.C. § 1117;

10     J. An award of punitive damages pursuant to California Civil Code § 3294;

11     K. An award restitution relief against Defendants and in favor of Benebone,

12   including disgorgement of wrongfully obtained profits and any other appropriate

13   relief;

14     L. An award an assessment and award of pre- and post-judgment interest on

15   all damages awarded; and

16     That Benebone be awarded such other and further relief as the Court deems

17   just and equitable.

18
19
20
21
22
23
24
25
26
27
28

DATED:  October 23, 2020               By:  /s/ *Joseph Lawlor*

                                                  HAYNES AND BOONE, LLP
Jason T. Lao
Jason.lao@haynesboone.com
Andrea Levenson
Andrea.levenson@haynesboone.com
600 Anton Boulevard, Suite 700
Costa Mesa, California 92626
Telephone: (949) 202-3000
Facsimile: (949) 202-3001

HAYNES AND BOONE, LLP
Richard Rochford (admitted *pro hac vice*)
Richard.rochford@haynesboone.com
Joseph Lawlor (admitted *pro hac vice*)
Joseph.lawlor@haynesboone.com
30 Rockefeller Plaza, 26th Floor
New York, NY 10112
Telephone: (212) 659-7300
Facsimile: (214) 918-8989

*Attorneys for Plaintiff*

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, and Civil Local Rule 38-1, Benebone hereby demands trial by jury on all issues raised by this Complaint.

DATED:  October 23, 2020

By:  /s/ *Joseph Lawlor*

HAYNES AND BOONE, LLP
Jason T. Lao
Jason.lao@haynesboone.com
Andrea Levenson
Andrea.levenson@haynesboone.com
600 Anton Boulevard, Suite 700
Costa Mesa, California 92626
Telephone: (949) 202-3000
Facsimile: (949) 202-3001

HAYNES AND BOONE, LLP
Richard Rochford (admitted *pro hac vice*)
Richard.rochford@haynesboone.com
Joseph Lawlor (admitted *pro hac vice*)
Joseph.lawlor@haynesboone.com
30 Rockefeller Plaza, 26th Floor
New York, NY 10112
Telephone: (212) 659-7300
Facsimile: (214) 918-8989

*Attorneys for Plaintiff*