Jason T. Lao (State Bar No. 288161)
jason.lao@haynesboone.com
Andrea Levenson (State Bar No. 323926)
andrea.levenson@haynesboone.com
**HAYNES AND BOONE, LLP**
600 Anton Boulevard, Suite 700
Costa Mesa, California 92626
Telephone: (949) 202-3000
Facsimile: (949) 202-3001

Joseph Lawlor (admitted *pro hac vice*)
joseph.lawlor@haynesboone.com
Richard Rochford
(admitted *pro hac vice*)
richard.rochford@haynesboone.com
**HAYNES AND BOONE, LLP**
30 Rockefeller Plaza, 26th Floor
New York, NY 10112
Telephone: (212) 659-7300
Facsimile: (212) 918-8989

*Attorneys for Plaintiff Benebone LLC*

Steven J. Nataupsky (SBN 155,913)
steven.nataupsky@knobbe.com
Ali S. Razai (SBN 246,922)
ali.razai@knobbe.com
Adam R. Aquino (SBN 324,526)
adam.aquino@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile:  (949) 760-9502

Benjamin B. Anger (SBN 269,145)
ben.anger@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
12790 El Camino Real
San Diego, CA 92130
Telephone: (858) 707-4000
Facsimile:  (858) 707-4001

*Attorneys for Defendant
Pet Qwerks, Inc.*

*Attorney information continues on next page*

# THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENEBONE LLC,<br><br>Plaintiff,<br><br>v.<br><br>PET QWERKS, INC. and DOSKOCIL MANUFACTURING COMPANY, INC. d/b/a PETMATE,<br><br>Defendants. | Case No. 8:20-cv-00850-AB-AFM<br><br>Hon. André Birotte Jr.<br><br>**JOINT FILING REGARDING DISPOSITIVE IMPACT OF CLAIM CONSTRUCTION AND PROPOSED SCHEDULE** |

Michael T. Murphy (SBN 11,357)
MMurphy@giplaw.com
*Admitted Pro Hac Vice*
Daniel Hwang (SBN 6,293,052)
DHwang@giplaw.com
*Admitted Pro Hac Vice*
Joseph F. Arand (SBN 6,294,836)
jarand@giplaw.com
*Admitted Pro Hac Vice*
**GLOBAL IP COUNSELORS, LLP**
1233 Twentieth Street, NW., Suite 600
Washington, D.C. 20036
Telephone: (202) 293-0444
Facsimile: (202) 293-0445

*Attorneys for Defendant*
DOSKOCIL MANUFACTURING COMPANY, INC. d/b/a PETMATE

# TABLE OF CONTENTS

**Page No.**

**DEFENDANTS' POSITION** ...................................................................1

I.  CLAIM CONSTRUCTION'S DISPOSITIVE IMPACT ....................1

II. DEFENDANTS' PROPOSED BRIEFING SCHEDULE AND
    HEARING DATE ..........................................................................4

**PLAINTIFF'S POSITION** ...................................................................4

III. DEFENDANTS FAIL TO COMPLY WITH THE COURT'S
     ORDER TO FILE A JOINT REPORT ON EARLY CLAIM
     CONSTRUCTION .......................................................................5

    A.  Defendants Refuse to Work Cooperatively to File a Joint
        Report, Potentially Leading to Unrebutted or Irrelevant
        Briefing ..............................................................................5

        1.  Benebone Offers a Mutual Exchange of the Joint
            Briefing, but Defendants Insist on a "Surprise
            Exchange" Where Neither Party can see the Others
            Briefing Before Filing ..............................................6

    B.  Defendants do not Have Good Cause to Rewrite the Case
        Schedule ............................................................................7

        1.  Legal Standard for Modifying the Schedule ...................8

        2.  Defendants Were not Diligent in Their Scheduling
            Request and Should not be Allowed to Modify the
            Schedule now ..........................................................9

IV. THE COURT SHOULD DETERMINE THE PROPER SCOPE
    OF THE CLAIMS OF THE DESIGN PATENTS DURING
    SUMMARY JUDGMENT OR AT TRIAL .......................................10

    A.  Defendants Misstate the law Regarding Functionality in
        Design Patents...................................................................12

    B.  The "Stick" Patents Should be Construed Using their
        Ornamental Design ............................................................13

V.  SHOULD THE COURT REQUIRES A SEPARATE CLAIM
    CONSTRUCTION PROCEEDING, IT SHOULD PROCEED
    UNDER THIS DISTRICT'S LOCAL RULES (L.R. 7-3
    THROUGH 7-10).......................................................................16

VI. CONCLUSION .........................................................................17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page No(s).**

*Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc.*,
  1998 WL 633636 (E.D. Va., June 2, 1998).............................................11

*Boiling Point Group, Inc. v. Fong Ware Co.*,
  Case No. 16-cv-01672 (C.D. Cal. 2017) ...............................................11

*Corves, LLC v. Dillard's Inc., et al*,
  Case No. 18-cv-08518 (C.D. Cal 2019) .................................................10

*Crocs, Inc. v. Int'l Trad. Comm'n.*,
  598 F.3d 1294 (Fed. Cir. 2010) .............................................................10

*Deckers Outdoor Corp. v. Rue Servs. Corp.*,
  2014 WL 12588481 (C.D. Cal. Aug. 29, 2014) ......................................11

*Depaoli v. Daisy Mfg. Co.*,
  2009 WL 2145721 (D. Mass. July 14, 2009) ..........................................11

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
  543 F.3d 665 (Fed. Cir. 2008)..................................................10, 12, 16

*Eclectic Prod., Inc. v. Painters Prod., Inc.*
  2015 WL 930045 (D. Or. Mar. 2, 2015) ..................................................3

*Five Star Mfg., Inc. v. Ramp Lite Mfg., Inc.*,
  44 F. Supp. 2d 1149 (D. Kan. 1999) ......................................................11

*Kaneka Corp v. Zhejiang Medicine Co., Ltd.*,
  2014 WL 12573845 (C.D. Cal. May 23, 2014)........................................11

*Lexos Media IP, LLC v. APMEX, Inc.*,
  2017 WL 1021366 (E.D. Tex. Mar. 16, 2017).........................................11

*Mobile Hi-Tech Wheels v. CIA Wheel Group*,
  514 F. Supp. 2d 1172 (C.D. Cal. 2007)...................................................15

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  572 U.S. 898 (2014) .................................................................................3

*Nomadix, Inc. v. Guest-Tek Interactive Entm't Ltd.*,
  2018 WL 10612577 (C.D. Cal. Apr. 3, 2018)........................................8, 9

*OddzOn Products, Inc. v. Just Toys, Inc.*,
  122 F.3d 1396 (Fed. Cir. 1997) ............................................................1, 2

1

**TABLE OF AUTHORITIES**
*(Cont'd)*

2

3

**Page No(s).**

4

*Peter Kao v. Snow Monster Inc. et al*,
    Case No. 17-cv-08934 (C.D. Cal. 2019) ...................................................10

5

6

*Sport Dimension, Inc. v. Coleman Co.*,
    820 F.3d 1316 (Fed. Cir. 2016) .........................................................12, 13

7

*Times Three Clothier, LLC v. Spanx, Inc.*,
    2014 WL 1688130 (S.D.N.Y. Apr. 29, 2014)...........................................3

8

9

*Vehicle Operation Tech. LLC v. Ford Motor Co.*,
    2015 WL 4036171 ......................................................................................11

10

11

*Vertical Tank, Inc. v. BakerCorp*,
    2019 WL 2207668 (E.D. Cal. May 22, 2019).....................................11, 13

12

*Yokohama Rubber Company Ltd et. al. v. Stamford Tyres
International PTE LTD et al*,
    Case No. 07-cv-00010 (C.D. Cal. 2010) ...................................................10

13

14

*Z Produx, Inc. v. Make-Up Art Cosmetics, Inc.*,
    2013 WL 5941049 (C.D. Cal. Nov. 5, 2013) .........................................2, 3

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Plaintiff Benebone LLC ("Benebone") and Defendants Pet Qwerks, Inc.
2   ("Pet Qwerks) and Doskocil Manufacturing Company, Inc. d/b/a Petmate
3   ("Petmate") (collectively "Defendants") submit this joint report at the Court's
4   request (D.I. 94) to provide the parties' positions regarding what dispositive
5   impact, if any, the requested early claim construction may have on this case as
6   well as a new proposed briefing schedule and hearing date.

**DEFENDANTS' POSITION**

**I.  CLAIM CONSTRUCTION'S DISPOSITIVE IMPACT**

9   As an initial matter, setting an early claim construction will benefit the
10  Court and the parties by narrowing the scope of expert discovery, focusing the
11  parties' summary judgment motions, and conserving the Court's and parties'
12  time and resources. The Court's construction will also aid in potential settlement
13  due to the wide gap between the parties' positions on the scope of Plaintiff's
14  asserted patents. Further, construction of the asserted patents may narrow the
15  parties' trade dress contentions: the same functional features are present in both
16  the patented designs and the asserted trade dresses.  *See, e.g.*, *OddzOn Products,*
17  *Inc. v. Just Toys, Inc.*, 122 F.3d 1396 (Fed. Cir. 1997) (same functional features
18  relevant to both design patent and trade dress counts).

19  More specifically, there are at least two aspects of the Court's
20  construction that will narrow the scope of the case and have a dispositive
21  impact. First, the Court's ruling on the functionality of Benebone's Wishbone
22  and Stick designs will be dispositive of the infringement of the design patents
23  and the asserted trade dress. As Defendants set forth in their Request (D.I. 78),
24  Benebone has admitted in the pleadings, in deposition, and in its own
25  advertisements that aspects of its claimed designs are functional, such as the
26  curved shape claimed of its Wishbone. *See* D.I. 78 at 2-4. As an example,
27  Benebone's product designer boasted that Benebone solved the problem of the
28  "flat plastic bone" by giving their Wishbone product a "curved design that helps

dogs get a hold of it."[1] *See also* D.I. 78 at 2-4 (providing additional examples of admissions of the products' functionality).

If elements of the claimed designs, such as the Wishbone's curved shape, are held to be functional, those elements must be identified in claim construction so that they are properly considered when the patents are compared to Defendants' accused products. *See OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) ("Where a design contains both functional and non-functional elements, ***the scope of the claim must be construed*** in order to identify the non-functional aspects of the design as shown in the patent.") (emphasis added); *see Z Produx, Inc. v. Make-Up Art Cosmetics, Inc.*, 2013 WL 5941049, at *5 (C.D. Cal. Nov. 5, 2013), aff'd, 568 F. App'x 897 (Fed. Cir. 2014) (construing certain design features as functional and unprotectable where plaintiff "has itself emphasized the functionality of the features at issue.").

The Court's identification of these functional elements in claim construction will be dispositive to the infringement analysis because, once the functional elements in the asserted patents are accounted for, there is simply no resemblance between the asserted patents and Defendants' accused products. *See Z Produx, Inc.*, 2013 WL 5941049, at *7 (finding that after functional features are "factored out, the designs bear little resemblance" and holding accused product not infringing).

Second, the Court's construction in addressing the inconsistencies between the Stick Patents' written description and drawings may be dispositive. *See* D.I. 78 at 4-7. As Defendants explained in their Request, the Stick Patents include statements regarding "dot-dot-dashed broken lines in the drawings" that were added during prosecution. *See id.* The purpose of the "dot-dot-dashed broken lines" is to inform the public of the unclaimed subject matter in the Stick

---

[1] https://www.evanlryan.com/benebone

1  Patents. *Id.* However, the drawings in the Stick Patents do not have any "dot-
2  dot-dashed broken lines" to inform the public (or the parties in the case)
3  regarding the purported unclaimed subject matter.

4      Defendants seek clarity from the Court on the scope of the Stick Patents
5  in view of these inconsistencies. Resolving these inconsistencies, if possible,
6  and understanding the scope of the Stick Patents' "unclaimed subject matter"
7  will benefit the parties as they proceed with expert discovery and summary
8  judgment briefing.

9      If, however, the scope of the claimed designs cannot be ascertained with
10 reasonable certainty, the Court's construction would be dispositive in rendering
11 the Stick Patents invalid as indefinite. *See Nautilus, Inc. v. Biosig Instruments,*
12 *Inc.*, 572 U.S. 898, 901 (2014) (A patent must "inform, with reasonable
13 certainty, those skilled in the [relevant] art about the scope of the invention.").
14 Courts have held design patents invalid as indefinite through claim construction.
15 For example, in *Eclectic Prod., Inc. v. Painters Prod., Inc.*, the court granted the
16 alleged infringer's request for a claim construction hearing, holding the design
17 patent indefinite because "[t]he patent, on its face, fails to provide notice of
18 what is claimed." 2015 WL 930045, at *3 (D. Or. Mar. 2, 2015) (construing
19 design patent where "conflict between the patent's verbal and visual
20 descriptions creates uncertainty about the claim's meaning."); *see also Times*
21 *Three Clothier, LLC v. Spanx, Inc.*, 2014 WL 1688130, at *8 (S.D.N.Y. Apr. 29,
22 2014) (finding design patent invalid as indefinite at claim construction where
23 drawings "suffer[] from a fatal inconsistency.").

24     For these reasons, an early claim construction ruling will narrow the
25 scope of the parties' dispute as they proceed into expert discovery and summary
26 judgment briefing.  Doing so will conserve the Court's and the parties' time and
27 resources.

28 / / /

## II.  DEFENDANTS' PROPOSED BRIEFING SCHEDULE
## AND HEARING DATE

Defendants propose the following briefing schedule and hearing date:

- Simultaneous Opening Claim Construction Briefs (25 page limit): February 12, 2021;

- Simultaneous Responsive Claim Construction Briefs (15 page limit): February 26, 2021

- Claim Construction Hearing: March 19, 2021

In addition, Defendants propose that subsequent dates in the schedule should be keyed off the Court's issuance of its claim construction order (but otherwise maintain the same timing between those dates). Defendants propose that the deadline for "Non-Expert Discovery Cut-Off" be set at 4 weeks following the Court's issuance of the claim construction order. This will ensure that the Court and the parties have the benefit of the Court's construction for expert disclosures and summary judgment briefing, as explained above.

The parties met and conferred regarding needed adjustments to the briefing schedule and hearing date, but did not reach agreement. The parties' proposed schedules are provided in Exhibit 1.

### PLAINTIFF'S POSITION

This case concerns Defendants' infringement of three design patents— U.S. Patent Nos. D870,400, D871,686, and D690,897 (collectively, the "Asserted Patents") that relate to ***pet and dog chew toys***. [2]  Defendants have argued—and continue to argue—that they need separate and early claim construction.  (*See* Dkt. 78)  But these pet and dog chew toy design patents don't contain the kind of complicated and discrete issues that require separate,

---

[2] Benebone also accuses Defendants of trade dress infringement and unfair competition, but those causes of action are not relevant to the current dispute.

or early, claim construction briefing. Courts routinely construe these types of design patents without a detailed verbal description, instead construing them simply as the "ornamental design as shown." Thus, a separate claim construction is unlikely to narrow the scope of expert discovery or conserve the Court's resources. Instead, any such separate claim construction would likely have **no** dispositive impact on this case. The Court's (and parties') resources would be better conserved by addressing any purported claim construction issues—to the extent they exist—during summary judgment or at trial.

Moreover, Defendants' proposal for claim construction briefing is *not* early. As fact discovery is set to close in March 2021, any ruling on claim construction would fall in the midst of expert discovery or later. Defendants recognize this and now—for the first time—propose to extend all deadlines in this case by a minimum of five weeks, making all deadlines contingent on the Court's issuance of a Claim Construction Order. But as shown below, Defendants do not have good cause (or reason) to extend the schedule. Benebone proposes that the Court continue using the same case schedule that the parties have twice previously agreed to and conduct claim construction—if necessary—in the context of either summary judgment or trial. Alternatively, should the Court decide it does need separate claim construction proceedings, Benebone raises the briefing procedure and hearing date under this District's Local Rules 7-3 through 7-10, as discussed below.

## III. DEFENDANTS FAIL TO COMPLY WITH THE COURT'S ORDER TO FILE A JOINT REPORT ON EARLY CLAIM CONSTRUCTION

### A. Defendants Refuse to Work Cooperatively to File a Joint Report, Potentially Leading to Unrebutted or Irrelevant Briefing

After Defendants filed their "request" for an early claim construction hearing date (and associated briefing) (*see* Dkt. 78), the Court ordered that the "parties file a ***joint report*** detailing the parties' positions regarding what

dispositive impact, if any, that the requested early claim construction may have on this case as well as a new proposed briefing schedule and hearing date." (Dkt. 94) (emphasis added).

1. **Benebone Offers a Mutual Exchange of the Joint Briefing, but Defendants Insist on a "Surprise Exchange" Where Neither Party can see the Others Briefing Before Filing**

To help the parties could work together towards filing the joint briefing, Benebone proposed the following schedule to Defendants.  First, Defendants— as the effective moving party who desire early claim construction briefing— would serve their portion of the briefing to Benebone.  Then Benebone would agree with portions of the Defendants' briefing as appropriate, or write its opposition, returning its written portion back to Defendants.  Defendants would then make any edits necessary in response and revert those changes to Benebone and Benebone would do the same, with each iterative exchange containing less edits until the joint briefing would be ready for filing.  The only dispute between the parties would be to determine a scheduling exchange that is fair.  In the experience of the undersigned, who has participated in dozens of joint filings in this District, the procedure above is appropriate to fully vet the briefing of both sides, and parties readily enter into this arrangement.

Benebone's first proposal was that Defendants would circulate their portion of the brief by the end of Thursday (two business days)), and Benebone would respond by Monday morning at 9 a.m. PT (one business day and the weekend).  The parties would then iteratively exchange any remaining edits before filing.  (Levenson Decl., ¶ 3; Exh. A at 7.)  Defendants disagreed, instead proposing a "surprise exchange," *whereby neither party gets to see or address the other party's briefing*.  *Id.* ¶ 4*;* Exh. A at 6-7.  Benebone then offered Defendants even more time, stating that Defendants could have until Friday at 2 p.m. PT (two and a half business days), and Benebone would respond by

Monday morning at 9 a.m. PT (half a business day, and the weekend).  *Id.* ¶ 5*;* Exh. A at 6.

Defendants continued to disagree, maintaining their position that a "surprise exchange" was the fairest way to address the Court's order.  *Id.* ¶ 6*;* Exh. A at 5.  Since Defendants refused to compromise, Benebone agreed to simultaneously exchange its portion of the briefing at 3 p.m. PT on Monday with Defendants but reserved the right to make any edits after it received Defendants portion.

But as Benebone notified Defendants, a "surprise exchange" could make it so arguments are addressed by only one-side, particularly here, where there is no opportunity for either party to reply.  This is not helpful for the parties—or the Court—*as issues could remain unaddressed by one side, or not be relevant (i.e., an opposition to a point the other side is not raising)*.

Since Defendants refused to exchange any briefing until 3 p.m. PT on the day of filing, Benebone had no choice but to submit to Defendants' surprise exchange.  It is for this reason that Benebone refers primarily to Plaintiff's already submitted briefings (namely, Dkts. 78, 86) below to answer the Court's question that a separate and early claim construction hearing will utilize the parties and the Court's resources but will not have a dispositive impact on this case.

**B.**   **Defendants do not Have Good Cause to Rewrite the Case Schedule**

The Court asked the parties to include in their joint report ***"a new proposed briefing schedule and hearing date***."  (Dkt. 94.) (emphasis added).  Defendants took the Court's order as an opportunity to propose an entirely new case schedule, delaying all proceedings by at least five weeks by making all dates dependent on the Court's Claim Construction Order.  But the Court's order to propose a "new proposed briefing schedule and hearing date" does not

/ / /

-7-

1  give cause for Defendants to raise an entirely new argument as to why all the
2  dates should be modified.

3        Since Defendants withheld their portion of the joint briefing, Benebone
4  does not know what other theories Defendants may raise to attempt to justify its
5  changes in the schedule.   But regardless of what Defendants may claim,
6  Defendants' proposal that ties all events to a ruling by the Court's Markman
7  Order is not justified, or necessary, as Defendants can simply raise any
8  purported claim construction issues during the summary judgment proceedings.[3]
9  Moreover, Defendants' have not shown that they have good cause to propose
10  the amendments to the schedule now.

11      **1.**    **<u>Legal Standard for Modifying the Schedule</u>**

12        "Rule 16(b)'s 'good cause' standard primarily considers the ***diligence*** of
13  the party seeking the amendment."   *Nomadix, Inc. v. Guest-Tek Interactive*
14  *Entm't Ltd.*, 2018 WL 10612577, at *2 (C.D. Cal. Apr. 3, 2018) (citations
15  omitted).   Accordingly, to demonstrate diligence, the moving party is required
16  to show:

17        (1) that it was diligent in assisting the Court in creating a workable
18        Rule 16 scheduling order; (2) that its noncompliance with the
19        scheduling order's deadline occurred or will occur notwithstanding
20        diligent efforts to comply because of "the development of matters
21        which could not have been reasonably foreseen or anticipated at the
22        time of the Rule 16 scheduling conference;" and (3) that it was
23        diligent in seeking amendment of the scheduling order once it
24        became apparent it could not comply with the order.

25  ///

26  ───────────────
27      [3] To the extent Defendants contend that the summary judgment proceedings would not provide sufficient space for their claim construction arguments, Benebone would not oppose a reasonable extension of page limits, subject to the Court's approval.
28

*Nomadix*, 2018 WL 10612577, at *2 (citing *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999).

## 2. Defendants Were not Diligent in Their Scheduling Request and Should not be Allowed to Modify the Schedule now

In the original Rule 26(f) conference, Pet Qwerks had ***four months*** to consider what scheduling needs it thought were appropriate. (*Compare* Dkt. 10 ("Proof of Service on May 12, 2020) *with* Dkt. 40 (Rule 26(f) Joint Report filed on September 11, 2020).   Benebone met and conferred with Pet Qwerks multiple times to address the modifications that Pet Qwerks wanted to the schedule, and together, the parties signed the Rule 26(f) joint report.  (*See Id*.) During the first Rule 26(f) Conference, Pet Qwerks chose not to ask for a separate claim construction hearing.  And at the second Rule 26(f) Conference, counsel for both Petmate and Pet Qwerks said they wanted to seek a claim construction hearing, but did not raise any proposals to modify the current deadlines.

After the second Rule 26(f) Conference, Defendants signed a joint report that kept the same deadlines from Scheduling Order.  (*See* Dkt. 77 at 13-14) (noting that the Parties agree to the previous schedule).  Some of the same counsel for Pet Qwerks also represent Petmate and were present for both the first and second Joint Rule 26(f) conferences.  Further, Defendants also stated expressly in the First Amended Joint Rule 26(f) Report that they "do not believe an early claim construction hearing will affect this schedule as entered . . ." (*Id*.)

Thus, Defendants cannot show that a new issue arose that they "could not have foreseen at the time of the scheduling conference", particularly as ***Defendants themselves***, in the First Amended Joint Rule 26(f) Report, assured the Court that a separate claim construction proceeding would not affect the schedule.  Defendants also haven't moved the Court to amend the schedule for

1    cause, and now—by refusing to give Plaintiff a chance to see their portion of the
2    joint briefing—are denying Plaintiff a chance to oppose.  As Defendants have
3    not shown they were diligently seeking the amendment, the Court should deny
4    Defendants' request to modify the scheduling order.

5    **IV.   THE COURT SHOULD DETERMINE THE PROPER SCOPE OF**
6    **THE CLAIMS OF THE DESIGN PATENTS DURING**
7    **SUMMARY JUDGMENT OR AT TRIAL**

8         Defendants' argument conflates its purported need for claim construction
9    with the need for an ***early and separate proceeding***.  In certain circumstances,
10   such as a complicated utility patent, an early claim construction can conserve
11   resources, but this is **not** the case here.  In contrast, for design patents like the
12   ones at issue here, resources will not be saved, since the proper construction
13   should simply be the ornamental design specified in the Asserted Patents.  *See*
14   *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008).  "As
15   a rule, the illustration in the drawing views is its own best description."  *Crocs,*
16   *Inc. v. Int'l Trad. Comm'n.*, 598 F.3d 1294, 1302 (Fed. Cir. 2010) (citations
17   omitted).  The USPTO's Manual of Patent Examining Procedure similarly
18   confirms this, stating that "[n]o description of the design in the specification
19   beyond a brief description of the drawing is generally necessary, ***since as a rule***
20   ***the illustration in the drawing views is its own best description***."  MPEP §
21   1503.01 (emphasis added).

22        As the drawings themselves are the best description of the design patents,
23   Court's frequently address any purported claim construction issues during
24   summary judgment proceedings.  *See e.g.*, Levenson Decl., Ex. B (*Peter Kao v.*
25   *Snow Monster Inc. et al*, Case No. 17-cv-08934, (C.D. Cal. 2019)) at 5-6; Ex. C
26   (*Corves, LLC v. Dillard's Inc., et al*, Case No. 18-cv-08518, (C.D. Cal 2019)) at
27   9-11; Ex. D (*Yokohama Rubber Company Ltd et. al. v. Stamford Tyres*
28   *International PTE LTD et al*, Case No. 07-cv-00010, (C.D. Cal. 2010)) at 2-3;

Ex. E ("*Boiling Point Group, Inc. v. Fong Ware Co.*, Case No. 16-cv-01672, (C.D. Cal. 2017)) at 3.

Defendants (at least according to their previous briefing) seek claim construction in two areas: (i) functionality and (ii) whether the patent examiner correctly identified the "broken lines" on the drawings as "dot-dot-dash" lines. First, whether a patent element should be considered functional instead of ornamental is a genuine dispute of fact that should be left to the jury to determine. *See Vertical Tank, Inc. v. BakerCorp*, 2019 WL 2207668, at *19 (E.D. Cal. May 22, 2019); *see also Deckers Outdoor Corp. v. Rue Servs. Corp.*, 2014 WL 12588481, at *3 (C.D. Cal. Aug. 29, 2014) (leaving such disputes to the jury in context of claim construction); see also *Five Star Mfg., Inc. v. Ramp Lite Mfg., Inc.*, 44 F. Supp. 2d 1149, 1156 (D. Kan. 1999) (deferring a determination regarding functionality until trial, if necessary); *Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc.*, 1998 WL 633636 at *6 (E.D. Va., June 2, 1998) (leaving the question of whether certain elements of the asserted design patent are functional to the jury); *Depaoli v. Daisy Mfg. Co.*, 2009 WL 2145721, at *5 (D. Mass. July 14, 2009) (holding that claim scope issues related to prosecution history or functionality will be addressed during summary judgment or as part of the jury instructions at trial.). Defendants' own request seeking a hearing concedes that "functionality" is fact question.

Defendants also previously cited to a series of cases, for the general premise that an early claim construction will conserve the Court's and parties' time and resources. But these cases all dealt with utility patents, not **design patents**. *See Kaneka Corp v. Zhejiang Medicine Co., Ltd.*, 2014 WL 12573845, at *1 (C.D. Cal. May 23, 2014); *Vehicle Operation Tech. LLC v. Ford Motor Co.*, 2015 WL 4036171, at *1; *Lexos Media IP, LLC v. APMEX, Inc.*, 2017 WL 1021366, at *1 (E.D. Tex. Mar. 16, 2017); *see also* Dkt. 78 at 1-2 (citing same cases). As discussed above, design patents are different than utility

patents, and claim construction is more abbreviated, since design patents 'typically are claimed as shown in drawings,'" and "the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Egyptian Goddess,* 543 F.3d at 679. (citations omitted).

**A.      Defendants Misstate the law Regarding Functionality in Design Patents**

In their effort to argue for a separate claim construction hearing, Defendants misstate the law regarding functionality in design patents.  First, "a design may contain both functional and ornamental elements, even though the scope of a design patent claim 'must be limited to the ornamental aspects of the design.'"  *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016) (citing *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed. Cir. 2015).

And second, contrary to Defendants' claims, even if a design patent has functional elements, those elements are not necessarily excluded from the infringement analysis.   This is because functional elements may have protectable ornamentation.  *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1321 (Fed. Cir. 2016).  In *Sport Dimension*, the Court considered whether design patent elements that it considered functional could be eliminated from the claim entirely.   The Court held they *could not be eliminated in claim construction*, but instead that the "fact finder should not focus on the particular designs of these elements when determining infringement, but rather focus on what these elements contribute to the design's overall ornamentation."  *Id.* at 1323.

Further, determining whether a set of elements is functional or not requires evaluating a series of factors:

/ / /

[W]hether the protected design represents the best design; whether alternative designs would adversely affect the utility of the specified article; whether there are any concomitant utility patents; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or an overall appearance clearly not dictated by function.

*Id.* at 1322 (describing *PHG* factors). Here, Defendants simply assume (without analysis) that certain elements of the design patent are functional; this is incorrect.

And finally, by Defendants own admission, the issues that they seek claim construction on require highly fact-specific evidence, such as deposition testimony and advertising evidence. (Dkt. 78 at 2-3.) Accordingly, whether a patent element should be considered functional instead of ornamental is often left to the jury to determine. *See Vertical Tank, Inc. v. BakerCorp*, 2019 WL 2207668, at *19 (E.D. Cal. May 22, 2019).

**B.**   **The "Stick" Patents Should be Construed Using their Ornamental Design**

Defendants also contend that D870,400 ('400 Patent) and D871,686 ('686 Patent) (collectively, the "Stick Patents") are inconsistent such that the Court must be required to construe them. Specifically, Defendants point to an amendment made by the examiner in both the '400 and '686 Patents that states as follows:

> The dot-dot-dashed broken lines in the drawings illustrate portions of the pet chew toy that form no part of the claimed design.

Dkt. 79-3 ("Anger Decl."), Ex. 3 at 15; Ex. 4 at 25.

Defendants argument appears to be that the design patents contain no such dot-dot-dashed lines, but only solid and dashed lines. But a look at the file

history for both patents quickly resolves this purported "discrepancy."  For the '686 Patent, the file history shows that the Applicant amended the specification on September 4, 2019, to state "[t]he features depicted in broken lines <u>are surface features with rounded ends that</u> form no part of the claimed design." (Dkt. 80-2, at BENE-282) (emphasis in original).  The Examiner, after a phone call with the Applicant's attorney on September 27, 2019, amended the statement to the current specification, which states "[t]he dot-dot-dashed broken lines in the drawings illustrate portions of the pet chew toy that form no part of the claimed design."  *Id*. at BENE-247.

Similarly, for the '400 Patent, the file history shows that the Applicant amended the specification on September 6, 2019 to state "[t]he <u>surface</u> features <u>with rounded ends</u> depicted in broken lines form no part of the claimed design. <u>The features depicted in broken lines outside of the circumferentialy[sic]-extending boundary line form no part of the claimed design.</u>"  (Dkt. 80-3 at BENE-175) (emphasis in original).  The Examiner, after a phone call with the Applicant's attorney on September 27, 2019, amended the statement to the current specification, which states "[t]he dot-dot-dashed broken lines in the drawings illustrate portions of the pet chew toy that form no part of the claimed design."  *Id*. at BENE-141.

A quick comparison of the before and after language for both the '686 and '400 Patent follows below:

| Patent Number | Initial Language | After Examiner's Amendment |
| --- | --- | --- |
| '686 Patent | the features depicted in broken lines are surface features with rounded ends that form no part of the | the dot-dot-dashed broken lines in the drawings illustrate portions of the pet chew toy that form no |

| Patent Number | Initial Language | After Examiner's Amendment |
|---|---|---|
| | claimed design | part of the claimed design |
| '400 Patent | the surface features with rounded ends depicted in broken lines form no part of the claimed design. The features depicted in broken lines outside of the circumferentialy[sic]-extending boundary line form no part of the claimed design | the dot-dot-dashed broken lines in the drawings illustrate portions of the pet chew toy that form no part of the claimed design |

As shown above, the purpose of the Examiner's amendment is to denote that the broken lines in the drawings illustrate portions of the pet chew toy that form no part of the claimed design.  At best, this is a clerical error that can easily be reconciled by the Court during the proper venue (either during summary judgment, or at trial).[4]  *See e.g.*, *Mobile Hi-Tech Wheels v. CIA Wheel Group*, 514 F. Supp. 2d 1172, 1185 (C.D. Cal. 2007) (noting that clerical errors for design patents can corrected using a two-step process of determining (1) whether the correction is not subject to reasonable debate; (2) whether the prosecution history does not suggest a different interpretation of the claims.).

---

[4] On the day of filing of this joint report, Defendants raised in a meet and confer that "indefiniteness" should be determined during a separate claim construction proceeding.  Again, since Benebone has not had the ability to see—or respond to—Defendants' arguments, it can only guess that Defendant is referring to the language in the specification of the Stick Patents, discussed above.   Benebone notes that Defendants did not raise the idea of "indefiniteness" in its previous briefing but referred only to the "Stick Patents' Inconsistencies." (*See* Dkt. 78 at 4-5.)  At any rate, if necessary, this narrow issue can be addressed during summary judgment.

# V. **SHOULD THE COURT REQUIRES A SEPARATE CLAIM CONSTRUCTION PROCEEDING, IT SHOULD PROCEED UNDER THIS DISTRICT'S LOCAL RULES (L.R. 7-3 THROUGH 7-10)**

As discussed above, the three design patents—directed towards pet and dog chew toys—do not require a separate claim construction proceeding. Benebone believes that the proper construction for each of the design patents should simply be the ornamental design specified in the Asserted Patents. *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008). But to the extent the Court determines a separate proceeding is necessary, Benebone proposes that this separate Claim Construction Proceeding be addressed under L.R. 7-3 through 7-10.

Under the local rules, Defendants, who are seeking a construction other than the ornamental design, would meet and confer with Benebone to discuss their proposed construction to see what, if any, agreement might be found prior to the briefing. This meet and confer process can limit, narrow, or resolve differences, and can also work to prevent needless briefing. *See e.g.*, Northern District of California Local Rules 4-1(b), available at https://www.cand.uscourts.gov/rules/patent-local-rules/ ("The parties shall thereafter meet and confer for the purposes of limiting the terms in dispute by narrowing or resolving differences . . . .").

In addition—and unlike in a utility patent case, where both sides may wish to propose specific constructions for a disputed phrase—here, Defendants already know Plaintiff's proposed constructions. It is Defendants who contend that a further construction outside of the ornamental design for the design patents is necessary. Thus, it is most efficient for the parties—and the Court— that after the meet and confer process: (1) Defendants write their claim construction briefing, (2) Benebone has the chance to agree or respond to

/ / /

Defendants' constructions, and (3) Defendants have a chance to write a targeted reply addressing what they believe to be any outstanding issues.

Thus, while Benebone does not believe a separate claim construction proceeding is necessary, should the Court wish to grant a claim construction proceeding, Benebone proposes the following schedule under L.R. 7-3 through 7-10:

1. Defendants shall file an Opening Claim Construction Brief on February 12, 2021 of no more than 25 pages;

2. Plaintiff shall file an Responsive Claim Construction Brief on February 26, 2021 of no more than 25 pages;

3. Defendants may file a Reply Claim Construction Brief on March 12, 2021 of no more than 10 pages;

4. The Claim Construction Hearing will be held on March 26, 2021 at 10 a.m.

## VI.  CONCLUSION

For at least the reasons above, the Court should deny Defendants' request for an "early" claim construction hearing.   The proposed "early" Claim Construction is unlikely to have a dispositive impact on this case and will only strain the resources of this Court and the parties.

Alternatively, should the Court determine that it needs a separate Claim Construction hearing in this case, Benebone proposes the following claim construction dates and schedule:

5. Defendants shall file an Opening Claim Construction Brief on February 12, 2021 of no more than 25 pages;

6. Plaintiff shall file an Responsive Claim Construction Brief on February 26, 2021 of no more than 25 pages;

7. Defendants may file a Reply Claim Construction Brief on March 12, 2021 of no more than 10 pages;

1    8.  The Claim Construction Hearing will be held on March 26, 2021 at 10
2         a.m.
3    / / /

1

2      HAYNES AND BOONE, LLP

3      Dated:  January 11, 2021        By: */s/  Jason T. Lao*
                                              Jason T. Lao
4                                             Andrea Levenson
                                              Joseph Lawlor
5                                             Richard Rochford

6                                      *Attorneys for Plaintiff*
                                       BENEBONE LLC
7

8      KNOBBE, MARTENS, OLSON & BEAR, LLP

9

10     Dated:  January 11, 2021        By: */s/  Benjamin B. Anger*
                                              Steven J. Nataupsky
11                                            Ali S. Razai
                                              Benjamin B. Anger
12                                            Adam R. Aquino

13                                     *Attorneys for Defendant*
                                       PET QWERKS, INC.
14

15     GLOBAL IP COUNSELORS, LLP

16

17     Dated:  January 11, 2021        By: */s/  Michael T. Murphy*
                                              Michael T. Murphy
18                                            Daniel I. Hwang
                                              Joseph F. Arand
19                                            *Admitted Pro Hac Vice*

20                                     *Attorneys for Defendant*
                                       DOSKOCIL MANUFACTURING
21                                     COMPANY, INC. d/b/a PETMATE

22     34192803

23

24

25

26

27

28

-19-